# BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY *v.* UNITED STATES.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Nos. 7, 8. Argued March 4, 1910; restored to docket for reargument April 4, 1910; reargued January 5, 6, 1911.—Decided March 20, 1911.

Every penal statute has relation to time and place; and corporations, whose operations are conducted over a large territory by many agents, may commit offenses at the same time in different places, or at the same place at different times.

The construction given to an identical former act prior to its reënactment by Congress, that penalties thereunder were not measured by number of cattle or number of cars, followed. *United States* v. *Boston & Albany R. R. Co.*, 15 Fed. Rep. 209; *United States* v. *St. Louis R. R. Co.*, 107 Fed. Rep. 807.

The act of June 29, 1906, c. 3594, 34 Stat. 607, to prevent cruelty to animals in transit, is general and applies to all shipments of cattle as made. The statute is not for the benefit of shippers but is restrictive of their rights, and violations are not to be measured by the number of shippers, but as to the time when the duty is to be performed.

Under the act of June 29, 1906, to prevent cruelty to animals in transit, offenses are separately punishable for every failure to comply with its provisions by confining animals longer than the prescribed time; and there is a separate offense as to each lot of cattle shipped simultaneously as the period expires as to each lot, regardless of the number of shippers or of trains or cars.

Where cases are properly consolidated below, as these and others were, the aggregate amount of possible penalties in all the actions consolidated is the measure of the amount in controversy to give jurisdiction to this court.

159 Fed. Rep. 33, modified and affirmed.

"THE act to prevent cruelty to animals while in transit," approved June 29, 1906 (c. 3594, 34 Stat. 607), provides:

"SEC. 1. That no railroad  .   .   .   whose road forms

any part of a line of road over which cattle . . . or other animals shall be conveyed . . . [in interstate commerce] . . . shall confine the same in cars, boats or vessels of any description for a period longer than 28 consecutive hours without unloading the same in a humane manner, into properly equipped pens, for rest, water and feeding, for a period of at least five consecutive hours, unless prevented by . . . unavoidable causes. . . . *Provided,* That upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to 36 hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of 28 hours, except upon the contingencies hereinbefore stated. . . .

"Sec. 2. That animals so unloaded shall be properly fed and watered during such rest. . . .

"Sec. 3. That any railroad . . . who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars. . . .

"Sec. 4. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States. . . ."

Under this act eleven actions were instituted in the Southern District of Ohio against the Baltimore and Ohio Southwestern Railway Company.

The complaint in each case gave the name of the station in Illinois from which the animals were shipped to

Cincinnati, the marks of the cars in which they were shipped, the hour on February 2, 1907, when they were loaded, and the various periods of confinement, which varied from 37 to 45 hours. The separate shipments consisted of one, two, three, and four carload lots, aggregating twenty-one cars, containing several hundred cattle and hogs. Most of the shipments were loaded at different times; but because one (1872) was forwarded under the 36-hour rule, the time for its unloading was the same as that of another shipment (1871), made eight hours later under the 28-hour rule, from a different station. At another station there were three shipments of one carload each of cattle, belonging to different owners loaded at the same time, but two (1869, 1873) of the cars were forwarded under the 28-hour rule and the other (1874) under the 36-hour rule.

The railroad company filed a separate plea in each case, admitting the allegations of the complaint, but setting up that "the shipment therein was forwarded to Cincinnati on its train No. 98, on which there were also loaded and forwarded other cattle, referred to in each of the other suits, and in the said several causes the said plaintiff is entitled to recover but one penalty, not to exceed five hundred dollars, which it is ready and willing to pay, and it pleads the said separate suits in bar to the recovery of more than five hundred dollars for all of the same."

The district attorney's motions for separate judgments on the admission in the several pleas were overruled. The court sustained the company's motion to consolidate the causes, entered judgment for a single penalty, and ordered "that the within order in case 1866 shall apply to, operate upon and be conclusive of all the rights of the plaintiff in each of the several causes, to wit, 1867–1874, 1880 and 1884." The Government sued out a writ of error in case 1866 and, apparently out of abundant cau-

tion, another in 1867, later entering into a stipulation in the Circuit Court of Appeals that the result in these two cases should control all the others.

The Circuit Court of Appeals for the Sixth Circuit (159 Fed. Rep. 33), held that the order of consolidation was proper, but reversed the judgment on the ground that the United States were entitled to recover eleven penalties or one for each of the eleven shipments.

*Mr. Edward Colston,* with whom *Mr. Judson Harmon, Mr. A. W. Goldsmith* and *Mr. George Hoadly* were on the brief, for plaintiff in error:

At the expiration of the 28-hour and also of the 36-hour period, all the cars constituted but a single train. Under § 3, the penalty is for failure to comply with the requirement that no live stock be confined in cars for a longer period than 28 hours without unloading. The number confined, whether estimated by the head, by the number of shipments, or by the carloads, is unimportant.

Under the Government's claim, if fifty horses, each belonging to a different shipper but shipped on the same train, were detained beyond the statutory time, there should be fifty penalties, but if all the horses belonged to the same person and were shipped to the same consignee by the same train, there would be but one penalty. As to construction of the old statute, §§ 4386, 4388, Rev. Stat., see *United States* v. *Boston & Albany R. R. Co.,* 15 Fed. Rep. 209; *United States* v. *St. Louis & S. F. R. R. Co.,* 107 Fed. Rep. 870. As Congress knew how the law had been interpreted in these two decisions and that the penalty did not multiply by either the number of cattle or by the number of cars, or by the number of shipments, it may be considered that a like construction was intended, and was expected to be given to those words. *Mason* v. *Fearson,* 9 How. 258; *United States* v. *G. Falk & Bro.,* 204 U. S. 143; *United States* v. *Hermanos,* 209

U. S. 339; *New Haven R. R. Co.* v. *Int. Comm. Comm.*, 200 U. S. 401; *White-Smith Music Co.* v. *Apollo Co.*, 209 U. S. 14; and see communication from Secretary of Agriculture, p. 3774, Cong. Rec., 59th Cong., 1st Sess.

The practice of the railroads in running solid stock trains was well known to Congress, and if the Congress had intended this law should carry the multiple penalties it would have said so. Whether $500 is not punishment enough to deter the railroads from violating the statute is a consideration of the sort that addressed itself to the legislature and not to the judiciary. *N. Y. C. & H. R. R. R. Co.* v. *United States*, 165 Fed. Rep. 833.

Being penal, this statute should be favorably construed for the carrier. For cases below on this point, see *United States* v. *N. Y. C. & St. L. R. Co.*, 168 Fed. Rep. 699; *Southern Pacific Ry. Co.* v. *United States*, 171 Fed. Rep. 363; *United States* v. *Oregon R. & N. Co.*, 163 Fed. Rep. 640; *United States* v. *A., T. & S. F. Ry. Co.*, 166 Fed. Rep. 160.

The rule for the interpretation of penal statutes is against the conclusion reached by the Court of Appeals. *United States* v. *Corbett*, 215 U. S. 233; *United States* v. *Sheldon*, 2 Wheat. 119; *United States* v. *Wiltberger*, 5 Wheat. 95. It is the legislature, not the court, which is to define a crime and ordain its punishment. But courts do ordain punishment when they undertake, as was done here, to multiply the penalty that the legislature has prescribed. *Elliott* v. *Railroad Co.*, 99 U. S. 576; *France* v. *United States*, 164 U. S. 682; *Bolles* v. *Outing Co.*, 175 U. S. 262; *United States* v. *Harris*, 177 U. S. 305.

It cannot be said it was an oversight or inadvertence, that Congress did not attach a penalty to each shipment, or carload or head of stock. If Congress had intended that the penalty clause should receive a different construction from that put on it by the prior decisions it would have made provision to that effect at the time of

this reënactment. *Werckmeister* v. *American Tobacco Co.*, 207 U. S. 381.

One offense cannot be split into many, and penalties thereby multiplied. 1 Bishop's New Crim. Law, §§ 793, 1061. In a criminal case no significance attaches to ownership except as it is a matter of identification of the property. *Nichols* v. *Commonwealth*, 78 Kentucky, 180; *State* v. *Fayetteville*, 2 Murphey (N. C.), 371; *Crepps* v. *Durden*, 2 Cowper, 640.

Congress did not esteem it necessary to inflict a fine of five hundred dollars for each shipment in a trainload containing possibly fifty shipments. See *State* v. *Stevens*, 81 Vermont, 445; Bishop on Statutory Crimes (2d ed.), ch. LXI (bot. p. 627), § 1121; *Fontaine* v. *State*, 6 Baxter, 514; *Woodford* v. *People*, 62 N. Y. 117; *United States* v. *Patty*, 2 Fed. Rep. 664; *Commonwealth* v. *O'Brien*, 107 Massachusetts, 208; *Louisiana* v. *Batson*, 108 Louisiana, 479; *Ward* v. *State*, 90 Mississippi, 249.

As to whether offenses committed against different persons are multiple or constitute but a single offense, see 12 Cyc. 289; 22 Cyc. 383; 25 Cyc. 61; and see also as to what constitutes a single offense: *Friedborn* v. *Commonwealth*, 113 Pa. St. 244; *Commonwealth* v. *Robinson*, 126 Massachusetts, 260; *Hurst* v. *State*, 86 Alabama, 604; *Hoiles* v. *United States*, 3 MacArthur, 371; *State* v. *Hennessey*, 23 Ohio St. 339, 347; *Smith* v. *State*, 59 Ohio St. 357, 358.

The amount in controversy is $5,500, the maximum fine that could be assessed if the claim of the United States prevails. The effect of the consolidation of all the eleven cases into one case makes the amount in controversy $5,500. *Beadles* v. *Smyser*, 209 U. S. 393.

All the cases representing, as they do, but a single controversy, and all having in fact been taken to the Court of Appeals and to this court as one case, it matters not, even if it be conceded, that the stipulation was that

no writ of error should be taken except in two of the cases. Such agreement would be invalid for want of consideration. *Ogdensburg &c. Ry. Co.* v. *Vermont &c. R. R. Co.*, 63 N. Y. 176; *Southern Railway Co.* v. *Glenn*, 98 Virginia, 309, 318; *Jones* v. *Spokane Valley Co.*, 87 Pac. Rep. 65; *Ward* v. *Hollins*, 14 Maryland, 158; *Mackey* v. *Daniel*, 59 Maryland, 484.

*Mr. Solicitor General Bowers* for the United States on the original argument; *Mr. Assistant Attorney General Denison* for the United States on the reargument:

Four theories as to the unit of offense have been suggested from time to time. They are: The individual animal, the carload, the trainload, and the shipment. The individual-animal theory was rejected in *United States* v. *Boston & Albany R. R. Co.*, 15 Fed. Rep. 209, as was the carload theory in *United States* v. *St. Louis & San Francisco R. Co.*, 107 Fed. Rep. 870. The trainload theory has had no substantial support in the lower courts. The shipment theory has been upheld by all the courts in which it has been involved excepting the District Court below. *United States* v. *Balt. & Ohio S. W. R. R. Co.*, 159 Fed. Rep. 33; *United States* v. *N. Y., C. & St. L. R. R. Co.*, 168 Fed. Rep. 699; *Southern Pacific Co.* v. *United States*, 171 Fed. Rep. 360, 363, aff'g 162 Fed. Rep. 412, and also in effect 157 Fed. Rep. 459; *N. Y. Central & H. R. R. R. Co.* v. *United States*, 165 Fed. Rep. 833, 843; *United States* v. *Oregon R. R. & Nav. Co.*, 163 Fed. Rep. 642; *United States* v. *Atchison, T. & S. F. R. R. Co.*, 166 Fed. Rep. 160.

The unit of offense under the act is not a continuing "confining cattle" in general, but it is the distinct "failure" to unload, feed, water, and rest whatever cattle shall then and there have completed 28 hours of confinement. It is for "every such failure" that the statute provides a penalty.

Where each item of an illegal doing of business is made a separate offense, penalties may be recovered for each. *State* v. *Broeder*, 90 Mo. App. 169; *State* v. *Heard*, 107 Louisiana, 60; *State* v. *Shafer*, 20 Kansas, 226; *Benson* v. *State*, 44 S. W. Rep. 168. Such items of action, even though coincident or concurrent or similar, are, nevertheless, separate offenses.. *United States* v. *St. Louis Southwestern R. Co.*, decided December 13, 1910; *People* v. *N. Y. Central R. R. Co.*, 13 N. Y. 78; *Chic. &c. R. R. Co.* v. *People*, 82 Ill. App. 679; *Indiana So. R. Co.* v. *State*, 165 Indiana, 613.

In this case, the statute makes each failure a separate offense, and not the whole series.

Failures to perform statutory obligations are separate offenses if they occur at different times or different places.

If, one by two strokes or shots injures two persons, there are two offenses, even though there was only one brawl; *Flemister* v. *United States*, 207 U. S. 373; *State* v. *Temple*, 194 Missouri, 228; *Augustine* v. *State*, 41 Tex. Cr. R. 59; *Kelly* v. *State*, 43 Tex. Cr. R. 40; *People* v. *Ocholski*, 115 Michigan, 601; *Baker* v. *Commonwealth*, 20 Ky. Law R. 879; 12 Cyc. 289; although where defendant by the same shot wounded four fishermen seated around a camp fire, it was held to be only one crime. *Sadberry* v. *State*, 39 Tex. Cr. R. 466; 12 Cyc. 289.

So as to counterfeits at different times; *Bliss* v. *United States*, 105 Fed. Rep. 508; *United States* v. *Radenbush*, 8 Pet. 288; although it may be only a single offense to possess two counterfeiting plates. *United States* v. *Miner*, 11 Blatch. 511; *S. C.*, 26 Fed. Cas., No. 15,780; *Miller* v. *State*, 72 S. W. Rep. 856; *Collins* v. *State*, 39 Tex. Cr. R. 30. See also *Stevens* v. *State*, 58 S. W. Rep. 96; *State* v. *Burlingham*, 146 Missouri, 207; *O'Neill* v. *Vermont*, 144 U. S. 323, 331; *Suydam* v. *State*, 52 N. Y. 383; *Pittsburg &c. R. Co.* v. *Moore*, 33 Ohio St. 384; *Parks* v. *Railroad Co.*, 13 Lea (Tenn.), 1; *Commonwealth* v. *Hazlett*, 16 Pa. Super.

Ct. 534; *Commonwealth* v. *Rockafellow,* 3 Pa. Super. Ct. 588.

The failures to unload charged in nine of the eleven cases all occurred at separate times and places.

In all of the eleven cases the failures to unload, etc., were separate offenses, because the statute intended that the mistreatment of cattle of, different shipments should be separate offenses.

An incidental policy of the act is to protect the interests of the owners of the cattle. *United States* v. *Pere Marquette R. R. Co.,* 171 Fed. Rep. 586; *United States* v. *Oregon R. R. & N. Co.,* 163 Fed. Rep. 640; *United States* v. *Sioux City Stockyards Co.,* 162 Fed. Rep. 556; *United States* v. *L. & N. R. R. Co.,* 18 Fed. Rep. 480; *Chicago &c. R. R. Co.* v. *People,* 82 Ill. App. 679; *Southern Railroad Co.* v. *State,* 165 Indiana, 613; *Commonwealth* v. *Jay Cooke,* 50 Pa. St. 201; and see Sen. Rep. No. 975, 59th Cong., 1st Sess.

The alleged mechanical inconveniences of operating a train under the shipment theory of this statute can be and in practice have been surmounted, and in any event they could not override the intention of Congress.

The natural and normal unit in which railroads deal with freight is by shipments, and those provisions make it clear that that point of view is the one taken by this statute.

The trainload theory has no affirmative recognition in the statute, and not even practical railroad administration requires it. Furthermore, it would tend to make the statute ineffective because the penalty which it would provide is so small.

Under the stipulation in this case this court has not jurisdiction; only two cases, each involving $500, are appealed, and the total amount in controversy is only $1,000. The amount in controversy in a case is not measured by the full amount of plaintiff's claim when defendant ad-

mits or agrees to a part of it, but is measured by the excess of plaintiff's claim above what defendant admits or acquiesces in. *Jenness* v. *Citizens' Nat. Bank*, 110 U. S. 52; *Hilton* v. *Dickinson*, 108 U. S. 165; *Gorman* v. *Havird*, 141 U. S. 206.

And the matter in dispute is the amount involved on the writ of error—not necessarily the same as was involved below. *Gordon* v. *Ogden*, 3 Pet. 33. The amount in dispute may, and must, be determined from the whole record. *Bowman* v. *C. & N. W. Ry. Co.*, 115 U. S. 611, 613.

Mr. Justice Lamar, after making the foregoing statement, delivered the opinion of the court.

The consolidated record of the eleven cases shows that several hundred cattle and hogs of eleven different owners, shipped in 21 cars, loaded at different stations at various hours on February 2, 1907, were in one train at the time of the expiration of the successive periods for the unloading required by the act of 1906, "to prevent cruelty to animals in transit." The question is as to the number of penalties for which, in such a case, the carrier is liable.

Under the nearly identical act of 1873, Rev. Stat. § 4386, it was held that the penalties were not to be measured by the number of cattle in the shipment, nor the number of cars in which they were transported. *United States* v. *Boston & Albany R. R. Co.*, 15 Fed. Rep. 209; *United States* v. *St. Louis R. R. Co.*, 107 Fed. Rep. 807. And the company contends that as the cattle here were in one train the failure to unload was one offense, punishable by one penalty. In support of its position it relies, among others, on authorities which hold that in larceny, if the goods stolen at one time belong to several persons the offense is single; and that, on conviction for working on Sunday, there is only one breach of the statute, the penalty for which cannot be multiplied by the number of items of work done on the day of rest.

But this does not mean, that if the thief should, at a different time, steal property from the same place, he could not be punished for the new transaction, nor that because a man had been convicted for working on one Sunday he could not be convicted and punished for subsequently working on a different Sunday. For every penal statute must have relation to time and place, and corporations whose operations are conducted over a large territory, by many agents, may commit offenses at the same time in different places, or at the same place at different times.

Here the 21 cars, loaded at different periods, had been gathered into one train. As the period of lawful confinement of the cattle first loaded expired, there was a failure to unload. For that failure the statute imposed a penalty. But there was then no offense whatever as to the animals in the other 20 cars of the same train, which, up to that time, had not been confined for 28 hours.

When, however, later in the day, at the same or a different place, the time for the lawful confinement of the animals in the other 20 cars successively expired, there were similar, but distinct and separate failures then and there to unload. They were separately punishable, since the provision that "for every such failure" the company shall be liable to a penalty prevented a merger. If the period of lawful confinement of several carloads of cattle expires at the same time and place, and the company fails to unload them as required by the statute, and if these cattle all belong to one owner, it is conceded that there is only one offense. It is not different if the same cattle, at the same time and place, had belonged to various owners, or had been shipped under different consignments.

Several expressions in the statute, and particularly the provision that, in estimating the period of lawful confinement, "the time consumed in loading and unloading shall not be considered," recognize that the proper load-

ing or unloading of a number of animals may be treated as a single act, and there is nothing to indicate that it is to be treated as more than one act because the animals happen to belong to different persons. The loading of numerous cars might proceed concurrently; or if not discontinuous or unduly prolonged several cars of cattle of the same consignor might be loaded at the same time within the meaning of the act, in which event the period of their lawful confinement, on the same train, would end at the same time and place. There would in this latter case be coincidence between the one shipment and the one offense.

But in determining whether the number of penalties is always to be measured by the number of shipments on the same train, even when the animals were loaded at different times, it is to be remembered that the statute is general. It applies to the transportation of a trainload of cattle belonging to one owner; to the more usual case where animals belonging to one or more owners are loaded into different cars at different times, and also to those instances where one or a few horses or other animals are shipped and at a different time or farther on during the journey other animals are loaded into the same car. These differences in shipments do not affect the duty of the carrier to the animals, but only the time when the duty to unload is to be performed. The number of consignors, the consent of the owner or agent in charge of the particular shipment that the cattle might be confined for 36 hours, the number of bills of lading and the particulars of the shipment are immaterial, except as they serve to fix the limit of lawful confinement.

To illustrate: It appears in this record that several hundred animals belonging to one owner and consigned to one dealer were loaded into four cars at the same time. The 28 hours of their lawful confinement necessarily expired at the same time. The simultaneous failure to unload these four cars was single, and punishable as a single

offense. But the duty and offense in this transaction would not have been quadrupled if the company had issued to the owner four bills of lading instead of one. Nor would there have been any increase of duty if these same cattle had been received from four consignors instead of one.

The statute was not primarily intended for the benefit of the owners. Indeed, it is restrictive of their rights. The penalty does not go to the consignor, but to the United States for each failure to unload cattle, regardless of who may own them; and even if the owner consented to their confinement beyond a period of 36 hours. The title of the act is "to prevent cruelty to animals in transit," its declared "intent being to prohibit their continuous confinement beyond a period of 28 hours, except upon the contingencies hereinbefore stated." Regardless of the number of shipments, at any time and place where they are willfully and knowingly confined beyond the lawful period there is a violation of the statute as to the animal or animals then and there in custody for transit in interstate commerce.

The point is made in the brief that this court has no jurisdiction, because the amount involved in the cases embraced in these writs of error was only $1,000. The court, we think properly, consolidated all the cases (Rev. Stat., § 921) and, as consolidated, the amount of the possible penalties sued for in the eleven actions was fifty-five hundred dollars. The company is liable for nine penalties, because nine times it failed to unload as required by the statute. One penalty should be imposed as to animals referred to in cases numbered 1871 and 1872, and one as to those in 1869 and 1873, where the time for the required unloading respectively coincided.

*In other respects the judgment of the Circuit Court of Appeals reversing the judgment of the District Court is affirmed.*