UNITED STATES v. OREGON SHORT LINE R. CO.

(District Court, D. Idaho, S. D.    October 31, 1914.)

Nos. 131–135, 137, 142, 147, 148, 151.

1. CARRIERS (§ 37*)—FEEDING AND WATERING LIVE STOCK—PENALTIES.

Under Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, §§ 8651–8654), prohibiting carriers from confining live stock in cars, boats, etc., for longer than 28 consecutive hours, without unloading them into properly equipped pens for rest, water, and feeding, and prescribing a penalty for violations thereof, where stock, after being confined in a car for more than 28 hours, are unloaded into pens of inadequate size and insufficiently equipped for feeding and watering, this merely continues and aggravates the offense, and does not constitute a new and separate offense, since the offense consists in confining the stock more than 28 hours without feeding, etc., which confinement may be in the cars alone, or in the cars and pens, and confinement in improper pens is material only in so far as it contributes to the offense of depriving the stock of the requisite food, water, and rest for more than 28 hours.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

2. CARRIERS (§ 37*)—FEEDING AND WATERING LIVE STOCK—PENALTIES.

Under Act June 29, 1906, where, though consignments of live stock which were confined in cars for more than 28 hours, without food, water, and rest, were unloaded simultaneously, they were received by the carrier at different hours, the unlawful confinement of each consignment constituted a separate offense.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

3. CARRIERS (§ 37*)—FEEDING AND WATERING LIVE STOCK—ACTIONS FOR PENALTIES—PLEADING.

In an action for a penalty under Act June 29, 1906, where there was no allegation as to the length of time that live stock was confined without food, water, and rest in the cars, or in the pens, or both together, no offense was stated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

Ten actions for statutory penalties by the United States against the Oregon Short Line Railroad Company. Judgment for plaintiff in all of the actions except one:

James L. McClear, U. S. Atty., of Cœur d'Alene, Idaho, and John R. Smead, Asst. U. S. Atty., of Boise, Idaho.

P. L. Williams, of Salt Lake City, Utah, and H. B. Thompson, of Pocatello, Idaho, for defendant.

DIETRICH, District Judge. [1] By stipulation, ten separate actions, brought by the government against the Oregon Short Line Railroad Company, for violations of the 28-hour law (Act June 29, 1906, 34 Stat. 607), have been submitted for decision upon the complaints, together with certain admissions of fact, without formal answers. Exclusive of such features as are directly ruled by Baltimore & Ohio R. R. Co. v. United States, 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384, it may be said that each of the cases turns upon one of the two following questions, namely: (1) If a carrier confines stock in a car

for more than 28 or 36 hours, as the case may be, and thereupon unloads them into pens of inadequate size and insufficiently equipped for feeding and watering, is it guilty of two offenses? and (2), if the carrier consolidates into the same train consignments loaded at different times, and thereafter, before the expiration of the period of 28 hours, unloads the entire train into pens of insufficient capacity and without proper facilities for feeding and watering, does it commit more than one offense? It is thought that both questions may be referred to one controlling consideration, and that is whether the mere unloading of stock into inadequate pens, of itself, constitutes an offense.

The act does not purport to prescribe at what points stock pens shall be maintained, or how they shall be equipped. Indeed, the carrier may fully comply with its terms without any pens at all. The purpose of the legislation is clear. It imposes upon the carrier the obligation of seeing to it that stock in transit are fed, watered, and rested at least once during every period of 28 hours, or, in certain contingencies, 36 hours. No other duty is prescribed. It is immaterial whether the stock are thus cared for upon the train or are unloaded into pens. The law is satisfied if, within the designated period, they are properly fed, watered, and rested. Without any wrongdoing, the carrier may operate cars having no facilities for feeding or watering, and so, likewise, it may maintain pens without equipment for such purposes. It is no more unlawful to unload stock into such pens than it is to load them into such cars. The offense consists in confining the stock beyond the period of 28 hours without feeding, etc. The confinement may be in the cars alone, or in the cars and pens, but in no case, whether it be in the cars or in pens, does it constitute an offense until it passes the prescribed limit. Confinement in improper pens is therefor material only in so far as it contributes to the offense of depriving stock of the requisite food, water, and rest for a period of more than 28 hours. In contemplation of law, the holding of stock in unfit pens is equivalent to holding them in cars which are deficient in similar particulars. Surely the mere unloading of stock into pens where they cannot be fed and watered does not in itself amount to a violation of the law. If, for illustration, after stock have been in transit for 10 hours, the carrier for some good reason holds them in pens for 5 hours without food or water, or an opportunity to rest, and then carries them on, and unloads them into properly equipped pens within 28 hours from the time they were originally loaded, no wrong has been done.

From these considerations it follows that, in unloading stock into improperly equipped pens after they have been confined in transit without food and water for more than 28 hours, the carrier only continues and aggravates the offense; it does not commit a new one. In effect the confinement in the cars is deemed to continue until the stock are unloaded into suitable pens and there fed, watered, and rested.

[2] In this view it is manifest that in each of the cases numbered 131, 134, 135, 137, 142, 147, and 148, where the first count charges confinement of sheep in cars beyond the lawful limit, and the second count charges that, after such confinement, they were discharged into

improperly equipped pens, only one offense or cause of action is stated. Although the six cars referred to in No. 134 were apparently consolidated in the same train with the eight cars involved in No. 135, and the two consignments unloaded simultaneously, they were received at different hours, and, within the rule of Baltimore & Ohio R. R. Co. v. United States, supra, the cases state two distinct offenses.

[3] In No. 151 there is no averment of the length of time the sheep were confined without food, water, and rest, either in the cars or in the pens, or both together, and for that reason no offense is stated.

As to numbers 132 and 133, there appears to be some confusion of view touching the facts. In his brief counsel for the defendant refers to these cases as involving the question whether, when stock loaded at different times are brought together in the same train and unloaded at the same time, within the 28-hour period, into unfit pens, more than one offense is committed. But the record shows that in 132 the sheep were confined in the cars 33 hours and 45 minutes, and in 133 for 29 hours and 45 minutes. If, therefore, we put aside the consideration that the pens were unfit, it still appears that the law was violated by the confinement in the cars, and in this view, the consignments having been loaded at different hours, each complaint states a distinct offense.

Before entering judgments, I would like to be advised of the circumstances of each case, with a view to fixing suitable penalty. Such explanation as the defendant desires to make should be furnished within 10 days. The district attorney is given 10 days thereafter in which to reply, or to furnish additional information.