UNITED STATES v. WATSON–DURAND–KASPER GROCERY CO.

(District Court, D. Kansas. May 17, 1917.)

1. FOOD ⬥⬥12—FOOD AND DRUG ACT—PROSECUTION FOR VIOLATION.

The shipment in interstate commerce of an adulterated food or drug product, which was the subject of a single sale and single shipment, although consisting of numerous packages, constitutes a single offense, under Food and Drug Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (Comp. St. 1916, § 8718).

2. FOOD ⬥⬥20(1)—FOOD AND DRUG ACT—"ADULTERATION" OF CONFECTIONERY.

Under Food and Drug Act of June 30, 1906, § 7 (Comp. St. 1916, § 8723), which provides that confectionery shall be deemed to be adulterated "if it contain terra alba, barytes, talc, chrome yellow, or other mineral substance or poisonous color or flavor, or other ingredient deleterious or detrimental to health, or any vinous, malt or spirituous liquor or compound or narcotic drug," there are three distinct and separate general modes of adulteration, and an information alleging the shipment in interstate commerce of confectionery, commonly called candy, "consisting in whole or in part of a filthy, decomposed, and putrid vegetable substance, and other ingredient deleterious or detrimental to health" charges an offense in violation of section 2 of the Act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adulteration.]

Criminal prosecution by the United States against the Watson-Durand-Kasper Grocery Company. Hearing by the court on demurrer and stipulation of facts. Judgment of conviction.

On July 27, 1916, the United States attorney for the district of Kansas, acting upon a report by the Secretary of Agriculture, filed in the District Court of the United States for said district an information against the Watson-Durand-Kasper Grocery Co., a corporation, of Salina, Kan., alleging shipment by said company, in violation of the Food and Drug Act, on or about February 1, 1915 (seven shipments), from the state of Kansas into the state of Colorado, of quantities of candy, variously labeled, which was adulterated. Analyses of samples of the article by the Bureau of Chemistry of the Agricultural Department showed that they were musty and stale, that animal excreta, larvæ, worms, and weevils were present in most of the samples, and microscopic examination showed the presence of organisms and molds. Adulteration of the article in each shipment was alleged in the information, for the reason that it consisted in whole or in part of a filthy, decomposed, and putrid vegetable substance.

On August 26, 1916, the defendant company filed its demurrer to the information. On May 14, 1917, the case came on for hearing, and was submitted to the court on the demurrer to the information and the stipulated facts; the court deeming such submission as amounting to a waiver of the demurrer. After due consideration the defendant was found guilty on May 17, 1917, and sentenced to pay a fine of $20 and costs, as will more fully appear from the opinion of the court.

Fred Robertson, U. S. Atty., of Kansas City, Kan.

David Ritchie and G. A. Spencer, both of Salina, Kan., for defendant.

POLLOCK, District Judge. The government filed an information in this case against defendant, charging it in seven counts with as many

violations of what is commonly known as the Food and Drug Act of June 30, 1906 (34 Stat. 768), in the shipment from the city of Salina, this state, to the city of·Denver, in the state of Colorado, of 250 pails of "confectionery," commonly called candy, consigned to one A. Lang, all as evidenced by two freight bills of the Union Pacific Railway Company, copies of which are attached to the complaint. To this complaint, and each and every count thereof, defendant interposes a general demurrer. The defendant further pleading not guilty, a trial by jury was waived, and the entire controversy submitted on stipulated facts. The case thus comes on for decision.

Two questions are presented for determination, viz.:   (1) Conceding the facts pleaded in the several counts of the information sufficient to charge defendant with the commission of one or more public offenses under the terms of the act, and the stipulated facts sufficient to clearly show the guilt of defendant, does the evidence found in the stipulated facts show defendant guilty of more than one offending against the law or amenable to more than a single punishment?   (2) It being admitted by the evidence the product offered for interstate shipment, and so shipped by defendant, was "confectionery," commonly called candy, and the charge made, as the information pleaded, being such product was adulterated, in that it contained in whole or in part a "filthy, decomposed, and putrid vegetable substance," does the information, or either count thereof, sufficiently charge defendant with adulteration of "confectionery," in violation of the act?   As the case stands submitted on both the demurrer to the information and each count thereof, and on the stipulated facts, and as resort must be had to the facts of the case to get at the true nature of the transaction, I deem it the better practice to treat the demurrer as having been waived by the submission of the case on its merits, or at least to overrule the demurrer and consider the questions presented by a consideration of the case on its merits.

[1] It appears, as was admitted at the trial, defendant company is a wholesale grocery company doing business in the city of Salina, this state.   In the conduct of its said business it handles "confectionery," commonly called candy, in wholesale quantities.   On or about the 1st day of February, 1915, in the conduct of its said wholesale candy business, there had accumulated in the possession of defendant a very considerable quantity of old, stale, unsalable remnants of candy.   The consignee named in the bills of lading, A. Lang, applied to and purchased this candy from defendant, giving instructions to ship the same to him at the city of Denver, Colo.   What purpose the buyer had in making the purchase or what use was intended by the purchaser to be made of the candy the evidence does not show.   In pursuance of said shipping instructions, defendant delivered the candy in pails to the Union Pacific Railway Company, and did cause the same to be shipped to the purchaser at the city of Denver, Colo.   That the purchase and sale thus made in bulk, or at wholesale, by defendant constituted but one transaction, is apparent.   While the railway company issued two freight bills covering the entire shipment, yet it is equally clear but a single shipment of the candy was made.   In such case may the government

carve out of the single transaction of sale, purchase, and shipment more than one offense under the terms of the act?

Looking, now, to the provisions of the act, it is seen to be its purpose, by section 1, to prohibit within territory under the jurisdiction of the United States the manufacture or misbranding of foods and drugs. By section 2 of the act to prohibit the shipment or offer for shipment in interstate commerce of adulterated or misbranded food or drug products. Conceding, therefore, the candy complained of in this case was adulterated in violation of the act, yet, as there was but a single sale, purchase, and shipment of the adulterated product, as the entire matter charged grew out of a single transaction and a single shipment, it must follow the plaintiff can carve out of this single transaction but, a single offense. Although there were 250 pails of the candy shipped, yet here, as under the provisions of the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [Comp. St. 1916, §§ 8651–8654]), the shipment made or offered by defendant must be taken as the unit, although it may consist of many parcels. No greater reason appears for dividing the shipment in question under the Food and Drug Act, all being comprehended under the general term "confectionery," into different lots or parcels than would appear for making the many different head or cars of stock a separate violation of the Twenty-Eight Hour Law. B. & O. Southwestern R. R. v. United States, 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384.

[2] Coming, now, to the remaining question, defendant contends, although the adulterated product charged to have been shipped in interstate commerce is pleaded to have been a food product, as the evidence discloses it to have been "confectionery," commonly called candy, and as the act by its terms defines in what the adulteration of "confectionery" consists, namely, "if it contains terra alba, barytes, talc, chrome yellow, or other mineral substance or poisonous color, or flavor," and as the adulteration here charged is not by the use of a mineral, but of a vegetable, substance; therefore, applying the rule of ejusdem generis, the act does not, by the addition of the phrase "or other ingredient deleterious or detrimental to health," cover a case in which the substance, deleterious or detrimental to health ingredient, is of a vegetable and not a mineral substance.

From a careful reading of the act I cannot give my assent to this construction for this reason: Conceding candy to fall under the general classification of "confectionery"; further conceding Congress has by the terms of the act specified what constitutes an adulteration of "confectionery," all as by defendant contended, yet I am of the opinion the phrase, "or other ingredient deleterious or detrimental to health," is not limited by or restricted to the preceding phrase, "or other mineral substance or poisonous color or flavor." On the contrary, I am of the opinion it was the intent of the lawmaking power to provide that "confectionery" may be adulterated in violation of the terms of the act in three distinct and separate manners or ways: (1) By causing it to contain "terra alba, barytes, talc, chrome yellow, or other mineral substance or poisonous color or flavor"; (2) by permitting it to contain or include any "other ingredient deleterious or detri-

mental to health"; or (3) by the use of "any vinous, malt, or spirituous liquor or compound or narcotic drug."

To my mind, this is the clear, unambiguous intent of the lawmaking power as gathered from the language employed in the act specifying the manners in which "confectionery" may be said to have been adulterated. It follows from what has been said judgment must go for plaintiff for a single penalty for the violation of the act.

It is therefore ordered the plaintiff have and recover from the defendant a penalty of $20 and costs of this prosecution.