## W. E. BRADFORD, Respondent, v. WILLIAM G. McADOO, Director General, Appellant.

Kansas City Court of Appeals.  January 26, 1920.

1. **INTERSTATE SHIPMENT:** Unloading: Extension of Time from 28 to 36 Hours: Diseased Stock Pens: Damages. An owner of live stock shipped them with a carrier from Columbia, Missouri, to Fayette, Mississippi. East St. Louis, Illinois, where the stock pens were infected with virulent diseases to live stock was on the route, and that point was within sixteen hours run from Columbia and the owner, in order to prevent unloading and feeding at that place, under the provisions of the interstate commerce law requiring carriers not to confine stock longer than twenty-eight hours without unloading, unless requested by the owner to extend the time to thirty-six hours, made such request. It was *held*, that this entitled him to have the stock carried such longer period than twenty-eight hours as was within thirty-six hours, and that the carrier violated the contract in unloading at East St. Louis within sixteen hours and was liable in damages for diseases contracted at that point.

2. **INTERSTATE SHIPMENT:** Unloading: Request of Shipper for Extension. The federal interstate commerce statute requires that carriers shall not confine live stock for a longer period than twenty-eight hours without unloading resting and feeding; but contains a proviso that if the shipper requests, this period may be extended to thirty-six hours. It was *held* that this proviso was for

the benefit of the shipper and that if he feared his stock would be infected with diseases if unloaded at a place less than twenty-eight hours run from place of shipment, had a right to request that the time be extended to thirty-six hours, and that if such request (incorporated in the contract of shipment) was violated by the carrier unloading within twenty-eight hours and his stock became diseased and died, it was liable in damages.

3. **BILL OF LADING: Interstate Shipment: Answer.** A bill of lading reading that a shipment is from Columbia to St. Louis, Missouri, but which has written across the face that the destination was Fayette, Mississippi, and defendant's answer stating the shipment was interstate, it will be so held on appeal.

4. **INSTRUCTIONS: Error Condoned.** Where defendant's instructions include the error complained of in plaintiff's instructions, defendant's complaint will not be considered.

5. **CLAIM OF LOSS: Notice.** Notice of claim on loss on shipment of live stock is now extended and made good by federal statute if given within ninety days of loss.

Appeal from the Boone Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*E. C. Anderson, Don C. Carter* for respondent.

*McBaine, Clark & Rollins* for appellant.

ELLISON, P. J.—Plaintiff was the owner of twenty-four heads of valuable live stock consisting of stallions, bulls, jacks and jennetts which he desired to ship from Columbia, Missouri, to Fayette, Mississippi. Defendant was director general of railways and as such in charge of the Wabash Railway, a common carrier. Plaintiff shipped the stock from Columbia to Fayette by the usual form of written contract or bill of lading at a freight rate agreed upon therein, the Wabash being the initial and the Illinois Central the destination carrier. More than one-half of this stock became sick and died from exposure and diseases contracted on the way. Plaintiff claims that this disaster was the result of defendant's breach of his contract and brought this action to recover damages. A motion to strike out parts of defendant's answer was filed which we need

not set out or specifically notice since the points arising thereon are hereinafter disposed of. Plaintiff prevailed in the trial court.

According to plaintiff's claim (made known to defendants agent at Columbia) the East St. Louis Illinois Stock Yards were infected with certain contagious and highly fatal diseases which were liable to be taken by stock put into the pens in such yards. East St. Louis was only sixteen hours run from Columbia and as it was the point of transfer from the Wabash railway to the Illinois Central railroad, plaintiff feared the stock would be unloaded at that place and exposed to these deadly diseases, and undertook to provide against it through what is known as a "thirty-six hour release," authorized by the interstate commerce law, which law made it the duty of interstate carriers of live stock not to confine such stock in cars for a longer period than twenty-eight hours before unloading for rest and feed, *unless* requested by the owner, in which event the period could be extended to thirty-six hours. Plaintiff made such request in writing and it was incorporated in the contract of shipment and thus secured himself against an unloading sooner than twenty-eight hours by extending the time to some period between twenty-eight and thirty-six hours, and thus placing his cattle beyond the reach of the infected yards at East St. Louis.

The breach of contract charged is that in violation of such provision, defendant unloaded the stock at East St. Louis after being loaded only about sixteen hours and exposed them, unprotected to highly inclement weather whereby they became infected with some of the diseases aforesaid with the consequences we have stated.

Plaintiff alleged in his petition that the "expression in the contract, 'thirty-six hours release' had a well known, usual, customary and defined meaning among stockmen . . . and always meant that the live stock then being shipped by virtue of said contract or bill of lading having said clause or expression written into

it, or attached thereto, would not be released or unloaded within thirty-six hours from the time the same was loaded at the starting point," and that plaintiff would not have shipped if he had not been given that privilege. We think this not the meaning of the release clause, and besides, there was no proof of the allegation and hence plaintiff failed to establish the particular matter upon which he chose to base his case, for which the judgment must be reversed and the cause remanded.

In view of a retrial it will be necessary that we state our construction of the contract.

The federal statute on the subject of unloading stock referred to above, reads that no interstate carrier of live stock ",shall confine the same in cars . . . for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner into properly equipped pens for rest, water and feeding for a period of at least five consecutive hours, unless prevented by storm, or by other accidental or unavoidable causes which cannot be anticipated or avoided by diligence and foresight; *Provided* that upon written request of the owner . . . the time of confinement may be extended to thirty-six hours, . . ." [3 U. S. Stat. Annotated, 373.]

Our view is that the proviso does not mean that the extension should be precisely thirty-six hours, as alledged by plaintiff, it means not longer than that time.

It is our view that the interpretation of the statutory expression that upon request of the shipper "the time of confinement may be extended to thirty-six hours," should be influenced by the wording of the preceding limitation. "That no railroad . . . over which cattle or other animals shall be conveyed . . . shall confine the same in cars . . . for a period longer than twenty-eight consecutive hours, without unloading," etc. The reading is not just twenty-eight hours, but not *"longer"* than that time. So that the extension clause would be construed as though it read "the time of confinement may be extended to a period not longer than thirty-six hours." The meaning of the two clauses only

differing as to the maximum length of time of confinement; and when we consider that plaintiff, in order to escape contagion for his stock, •desired more time than twenty-eight hours by extending the time to à period not longer than thirty-six hours, it becomes plain that he was entitled to such an extension as would cause unloading to occur not earlier than some time between twenty-eight and thirty-six hours.

Defendant insists the statute does not apply—that it is entitled "An act to prevent cruelty to animals in transit by railroad," etc. We concede, as its title indicates, that it was enacted to prevent cruelty to animals in transit, for the Supreme Court of the United States (B. & O. S. W. R. R. v. United States, 220 U. S. 94, 106) has said that "The title of the act is 'to prevent cruelty to animals in transit,' its declared 'intent being to prohibit their continuous confinement beyond a period of twenty-eight hours, except upon the contingencies hereinbefore stated.' "

Yet it is apparent from the proviso in the statute that if the shipper so desires, it will be lawful for him to agree with the carrier that the time of confinement without unloading, feeding and rest, shall be extended to as long as thirty-six hours. There is no restraint put upon the owner, in this respect. If a cause for extension suggests itself to him, he may request it and, if the carrier agrees to it, it becomes a lawful contract which, if violated by the carrier and damage results, undoubtedly a cause of action arises. In the present instance every good reason existed why plaintiff did not want his cattle unloaded at the disease infected yards at East St. Louis and he knew that if they were not unloaded until a time beyond twenty-eight and within thirty-six hours, they would be beyond the reach of those yards and wholly out of danger from them. While the statute is a humane one with an object to prevent cruelty to animals, yet from the very nature of shipments it could not have been intended or expected to altogether prevent suffering. That would scarcely be possible. Live stock unused to restraint and used to

utmost freedom of action, must necessarily suffer when closely confined and huddled together in cars even for a short time. But they must be shipped long distances and the lawmakers have not endeavored to give total relief but as near as may be, have fixed upon such periods of confinement, which, while mollifying suffering will yet consist with practical service by the carrier. This period has been fixed at not more than twenty-eight hours unless the shipper desires thirty-six, in which event a contract may be legally made for the latter time that is, for a period not exceeding that time. The statute being that stock shall not be confined for a period exceeding twenty-eight hours, except "upon the written request of the owner . . . the *time of confinement may be extended to thirty-six hours,*" necessarily has a meaning that for some supposed benefit to the shipper he may prefer that his stock be not unloaded within the twenty-eight hours named in the statute and that the space of time be extended *beyond* such time not exceeding thirty-six hours. If there is an unloading *within* the twenty-eight hours when a request has been properly made for an extension to thirty-six hours, there is a breach of contract, for, by such act the carrier has foiled the object and purpose the shipper had in making the request.

Plaintiff knew that as East St. Louis was within a running period of twenty-eight hours from Columbia, defendant could choose it as the point where he would unload for feed and rest as required by the statute, unless he (plaintiff) requested that the time be extended to thirty-six hours, and knowing this, it was to his interest to escape the danger of disease to his stock and to accept the privilege the law gave him and request an extension beyond the twenty-eight hours limit. He therefore made the request and thereby became the beneficiary in a contract, that defendant breached by wrongfully defeating him in his purpose.

It will not do to say by way of escape from this idea that the object of the law was humanity to the stock. That may be conceded to be a primary object

27—Mo. App.

which moved to the enactment of the law, but it is manifest that such law has expressly made room for a condition looking to the benefit of the shipper—a condition which is his by mere written request.

It is insisted that the contract did not evidence an interstate shipment, in that it "covered transportation only to St. Louis, Missouri." We think this objection is not sound. The bill of lading or contract does read "from Columbia to St. Louis, Missouri;" but it is therein provided by a writing across the face thereof that the destination was Fayette, Mississippi. That Health Certificate was attached and that thirty-six hours release was attached. The face of the whole record of the trial discloses that it was a shipment to Fayette and so accepted by defendant. Besides defendant set up in its answer that the shipment was interstate from Columbia, Missouri, to Fayette, Mississippi.

In 1 Roberts on Federal Liabilities of Carriers, 263, the author says; "The interstate status of a shipment cannot be determined by the mere forms of billing or contract, but by the essential character of the commerce, that is, whether in fact there is a continuity of movement from a point in one State to a point in another. Whenever a commodity is delivered to a carrier for the purpose of being moved to another State, then the interstate character of that commodity has commenced and continues to the final place of destination until delivered to the consignee."

And again at page 264, he continues: "The interstate character of such a shipment cannot be destroyed by ignoring the point of origin and destination, separating the same shipment between two points in the same State, when it is, in fact, a continuous shipment from a point in one State to a point in another. The movement of a commodity, therefore, from a point in one State to a point in another must be regarded as an entirety and it takes character as interstate commerce when it is delivered to a carrier for the purpose of

transportation to another State." To the same effect is Potter v. Railroad, 187 Mo. App. 56.

Defendant next objects to plaintiff's instruction No. 1, on the ground that it submits a question of law to the jury by submitting to them a question as to the proper interpretation of the contract. It is not necessary to say whether this is a just criticism for the reason that if the instruction has that fault, it was condoned by those asked by the defendant. We do not see any substantial difference in this respect. In such situation defendant cannot complain. [Christian v. Ins. Co., 143 Mo. 460, 467; Reilly v. Railroad, 94 Mo. 600, 611.]

Plaintiff's notice of claim was proper under the present federal statute. [U. S. Stat. at Large 1913-1915, Vol. 38, Part 1, Public Laws.]

The judgment is reversed and cause remanded. All concur.