## THE NANKING.

### CHINA MAIL S. S. CO., Limited, v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. July 2, 1923.)

No. 3863.

1. **Aliens ☞57—Amended Immigration Act was intended to make duty of preventing landing of immigrants imperative.**

The amendment of Immigration Act Feb. 20, 1907, § 18, by Act Feb. 5, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ee), so as to make it the duty of vessels to prevent the landing of aliens in violation of the act, and to make it a misdemeanor to fail to comply therewith, manifested, in view of the construction of the former act as requiring the vessel to exercise only due care to prevent a landing, an intention to make imperative the duty to prevent unlawful landings.

2. **Aliens ☞58—Answer to libel for penalty for permitting unlawful landing held insufficient.**

An answer to a libel to collect a penalty against a vessel for unlawfully permitting Chinese to land, which alleged that no one was permitted to land from the vessel, except by means of the regular gangway, and that all who left over it exhibited passes, so that the escape of the immigrants must have been effected by means of passes issued to Chinese residents, who had lawful business on the vessel, and who transferred the passes to the aliens who escaped, was insufficient to show the exercise of diligence to prevent the escape of the aliens, so that exceptions thereto were properly sustained, even if the vessel owner was not an absolute insurer against such escape.

3. **Aliens ☞39, 40—Congress can impose any condition on right to import aliens.**

Since Congress has power to prohibit absolutely the importation of immigrants into the United States, it may impose any condition that is deemed proper to such importation, and vessels engaging in that business do so in acceptance of the conditions created, so that Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.), was not unconstitutional, even if construed to impose an imperative duty on a vessel to prevent the unlawful landing of immigrants.

4. **Admiralty ☞65—Allegation of libel that it was impractical to proceed against master held confessed.**

Where a libel to enforce against a vessel the penalty prescribed for unlawfully permitting aliens to land alleged that it was impractical to prosecute the owner, master, or agent of the vessel, and after exceptions were sustained to the whole answer, respondent elected not to file an amended answer, that allegation was confessed, and the failure to prove it cannot be raised on appeal from a decree for the penalty.

5. **Aliens ☞57—Court cannot impose less than $1,000 penalty against vessel for permitting unlawful landing.**

The statute providing that a penalty of $1,000 shall be a lien on the vessel from which immigrants are permitted unlawfully to land, but not

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in terms requiring the court to impose the penalty against the ship, does not give the court the discretion to fix penalty in any amount less than the sum so named, if the Secretary of Labor is of the opinion it is impractical or inconvenient to prosecute the person who has permitted the unlawful landing and has caused the lien to be imposed on the vessel in that amount.

6. **Aliens ⚷═57—Penalty is imposed for each immigrant unlawfully permitted to land.**

Each immigrant permitted to land unlawfully from a vessel subjects the vessel to a separate penalty for $1,000 under a statute providing for a fine in each case.

Appeal from the District Court of the United States for the Territory of Hawaii; Horace W. Vaughan, Judge.

Libel by the United States against the steamship Nanking, of which the China Mail Steamship Company, Limited, was owner and claimant. Decree for the United States, and claimant appeals. Affirmed.

A libel was filed in admiralty on behalf of the United States to subject the steamship Nanking to penalties aggregating $4,000, under four counts charging the landing of four Chinese at Honolulu from said steamer, in violation of the provisions of section 10, c. 29, of the Immigration Act of February 5, 1917, 39 Stat. 881 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ee). The libel alleged in each count that in the opinion of the Secretary of Labor "it is impracticable and inconvenient to criminally prosecute the person, owner, master, officer, or agent of said steamship." The appellant answered, denying that it unlawfully permitted such landing, and alleging in defense that the escape from the vessel occurred, notwithstanding that it took every reasonable and proper precaution to prevent it, and that no Chinese passenger left the vessel without exhibiting a proper pass, issued by the inspector of immigration at Honolulu, and that the escapes must have been effected by the fraudulent use of passes issued by the United States inspector of immigration at Honolulu to Chinese residents of Honolulu who had lawful business on said ship. The appellee excepted to the answer as insufficient, and the court ruled that the answer failed to disclose a meritorious defense, and sustained the exceptions, and ordered that, unless the appellant should amend its answer within 10 days, decree might be entered according to the prayer of the libel. There was no amendment, and the court accordingly entered a decree as prayed for.

Smith, Warren, Stanley & Vitousek, L. J. Warren, and R. A. Vitousek, all of Honolulu, Hawaii, for appellant.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., and Wm. T. Carden, U. S. Atty., of Honolulu, Hawaii.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that it was error to hold that under section 10 of the act of February 5, 1917, it was the absolute duty of those engaged in bringing aliens to a seaport of the United States to prevent under all circumstances the landing of aliens at any time or place other than that designated by the immigration officers, and that the penalty of the section will apply if the alien effects his escape from the vessel without their knowledge or consent, and notwithstanding that they may have exercised due diligence and taken every reasonable and proper precaution to prevent such landing. A previous statute on the

⚷═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

subject, section 8 of the act of March 3, 1891, 26 Stat. 1086, made it the duty of the officers and agents of vessels to adopt due precautions to prevent the landing of any alien immigrant at any place or time other than that designated by the inspection officers, and provided that:

"Any such officer or agent, * * * who shall either knowingly or negligently land or permit to land any alien immigrant at any place or time other than that designated by the inspection officers, shall be deemed guilty of a misdemeanor."

[1] The Immigration Act of February 20, 1907, by section 18 (34 Stat. 904), had made it the duty of owners, officers, or agents of any vessel to prevent the landing of an alien in violation of the act and had declared that "the negligent failure" to comply with that provision should be deemed a misdemeanor. In Hackfeld & Co. v. United States, 197 U. S. 442, 25 Sup. Ct. 456, 49 L. Ed. 826, the court construed the act of March 3, 1891, and held that it did not make the ship-owner or master an insurer against the escape of an alien from the vessel, but required him only to take precaution to prevent such escape, and to exercise the care and diligence required by the circumstances. Congress thereafter amended the statute by the act of February 5, 1917, and made it "the duty" of the owners, officers, and agents of vessels to prevent the landing of the alien, and provided:

"The failure of any such person, owner, officer, or agent to comply with the foregoing requirements shall be deemed a misdemeanor and on conviction thereof shall be punished by a fine," etc.

[2] It seems reasonably clear that the intention of the statute was to make imperative the duty of preventing such unlawful landings of aliens. This is further indicated by the report of the House committee on immigration in explanation of the bill while it was on its passage. Nor are we convinced that it was error to sustain the exceptions to the answer. The defense pleaded was in substance that the appellant took every reasonable and proper precaution to prevent the aliens from leaving the vessel, that none did escape except over the regular gangway, that the gangway was well guarded, and that all who left over the gangway exhibited passes issued by the inspector of immigration at Honolulu, and that the escapes must have been effected by the fraudulent use of passes which had been issued to Chinese residents of Honolulu, who had lawful business on the vessel and who must have transferred them to the aliens who escaped. We find these allegations insufficient to excuse the appellant from the liability imposed by the statute. Escape by the means suggested in the answer might, we think, have been prevented by the exercise of the diligence which is made necessary by the statute. To hold thus, it is not necessary to go so far as to assume that the statute makes the owner of a vessel an absolute insurer against the landing of aliens in the United States at any time or place other than as designated by the immigration officers.

[3] We are not impressed with the contention that the statute, if so construed, is unconstitutional. Congress has the power to prohibit absolutely the importation of immigrants into the United States, and it may impose any condition it deems proper to such importation of

aliens. Vessels engaged in such transportation must be held to undertake to do so in acceptance of the conditions thus created. The appellant was carrying Chinese aliens from Hongkong to Mazatlan, Mexico, by way of San Francisco. In touching at Honolulu, and at San Francisco, it was required to see that the aliens were given no opportunity to land upon the territory of the United States.

[4] The point is made that no proof was made of the allegation of the libel that in the opinion of the Secretary of Labor it was impractical or inconvenient to prosecute the person, owner, master, officers, or agent of the vessel. It may be doubted whether any such proof is necessary in any case, in which it is sought to impose the penalty on a vessel. It is clear that it was not necessary in the present case, for the reason that the said allegation of the libel was not placed in issue. Exceptions were sustained to the whole answer, and when the appellant elected in open court not to amend the answer, or plead further, but to stand on its answer as filed, the libel was, as to that allegation, taken pro confesso.

[5] It is contended that penalties of $4,000 were illegally imposed, in that the essential condition precedent to the filing of a suit in rem was not shown, and it is argued that it is not the intention of the statute to vest in the Secretary of Labor the power by a mere mental conception of his own to cut off all milder degrees of punishment which are permitted as against persons, and impose the maximum fine against the vessel, and thus to disregard the degree of the offense, which, in justice, might in certain instances, call for the imposition of the lowest permissible fine, and it is urged that in any event there should have been imposed but one penalty of $1,000, and that a penalty of $1,000 for each alien who escaped is excessive punishment. It is true that the statute does not in terms say that the court shall impose a penalty against the ship. It provides only that "a penalty of $1,000 shall be a lien upon the vessel." While the true construction of the statute may be open to doubt, we are inclined to the view that it should be accepted with the meaning which was given to it by the court below, and that it requires that for each such unlawful landing of an alien the Secretary of Labor, if in his opinion it is impractical or inconvenient to prosecute the person who has permitted such unlawful landing, may cause to be imposed upon the vessel a lien of $1,000, and that a court is not given the discretion to fix the penalty in any amount less than the sum so named in the statute.

[6] We cannot assent to the proposition that there was but a single violation of the statute. The appellant cites cases such as B. & O. Southwestern R. R. v. United States, 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384, Standard Oil Co. v. United States, 164 Fed. 376, 90 C. C. A. 364, and United States v. Oregon Short Line R. Co. (D. C.) 218 Fed. 868, where but one penalty was imposed for violation of law as to numerous shipments of cattle. But in those cases there was but one act of transportation of various shipments contrary to law, or but one violation of the time limit upon the confinement of live stock in a single transportation. Nor is the case similar to United States v. New York Cent. & H. R. Co. (D. C.) 232 Fed. 179, and

United States v. International Silver Co. (D. C.) 255 Fed. 694, where the illegal act was the solicitation of alien immigration prohibited under the contract labor law. There, although numerous aliens were solicited, the act of solicitation was the act for which punishment was inflicted, and it was dealt with as a single offense.

The present case is similar to Grant Bros. v. United States, 232 U. S. 647, 34 Sup. Ct. 452, 58 L. Ed. 776, where penalties were imposed upon conviction of providing for transportation for, and assisting, encouraging, and soliciting the transportation into the United States of, alien laborers in violation of the Alien Immigration Act of February 20, 1907. The court there gave effect to the words of the statute which provided that separate suits might "be brought for each alien thus promised labor or service." So in the present case the statute provides for a fine "in each case."

The decree is affirmed.