## THE BREMEN.

(District Court, S. D. New York. January 31, 1927.)

1. Aliens ⊜—46—Alien passing through United States on transit certificate, which entitled him to remain for 60 days, held without right to re-enter, otherwise than on his status at that time.

An alien holding a transit certificate which entitled him to travel through the United States and to remain therein for 60 days, who shipped as a seaman for a foreign port before the end of that time, held to have surrendered the unexpired portion of the term and without right to re-enter, except on conditions applicable to his status at the time of his return.

2. Aliens ⊜—58—In suit against vessel for penalty for illegal landing of alien, proof that it was impracticable or inconvenient to prosecute owner or master was not required (Immigration Act 1917, § 10 [Comp. St. § 4289¼ee]).

In a suit under Immigration Act 1917, § 10 (Comp. St. § 4289¼ee), to enforce a lien against a vessel penalty for landing an alien at a place other than that designated by the immigration officers, in which it is alleged that in the opinion of the Secretary of Labor it is impracticable or inconvenient to prosecute the owner or master, proof that such opinion was well founded is not required.

In Admiralty. Suit by the United States against the steamship Bremen. Decree for the United States.

Emory R. Buckner, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Colahan & Stanley, of New York City (C. S. Stanley, of New York City, of counsel), for claimant.

KNOX, District Judge. [1] When Gossel, the alien, became a seaman on board the Yorck, for a round trip from New York to Bremen, he had not been admitted to the United States for permanent residence. He was here on a transit certificate entitling him to travel from Mexico to Hamburg, via the United States. By its terms, he might remain here for a period of 60 days; but there was no obligation upon him to do so. When he chose to leave the country before the expiration of his privilege, he surrendered its unexpired portion, and had no right to re-enter the United States, save upon the conditions applicable to his status at the date of his return.

He came back as a seaman on the Bremen, but, upon being examined by the immigration officials on board the ship, said that he intended to abandon his calling and work ashore. Therefore he had no right to land without inspection and compliance with the requirements of the Immigration Law. The chief officer of the Bremen was served with notice to deliver Gossel to the immigration station at Ellis Island. This was not done. Instead, the alien was paid off and discharged. By some means, not disclosed by the record, Gossel got ashore. He was subsequently found in Ohio and deported.

Alleging that the Bremen brought the alien to the United States from a foreign port, and that it failed to prevent his landing at a place other than that designated by the immigration officials, the government, under section 10 of the Immigration Law (Comp. St. § 4289¼ee), seeks to impose a lien upon the vessel for a penalty of $1,000; there being a further allegation that, in the opinion of the Secretary of Labor, it is impracticable and inconvenient to prosecute the person, owner, master, officer, or agent of the vessel who violated the provisions of the section.

[2] North German Lloyd, claimant of the vessel, calls attention to the fact that it has an office in this jurisdiction, and that the Bremen is a liner making periodical trips to and from this port, and objects to the procedure adopted by libelant, upon the ground that there is no basis for the Secretary's opinion of impracticability and inconvenience in prosecuting the owner of the vessel. In any event, demand is made that libelant make proof of the allegation. The question was raised in The Nanking (C. C. A.) 290 F. 769, but the manner in which it arose did not admit of a definite decision upon the necessity of actual proof. But the court did say that "it may be doubted whether any such proof is necessary in any case, in which it is sought to impose the penalty on a vessel."

Presumably, an officer of the government acts in good faith, and whether a particular course of procedure in a given case is or is not impracticable or inconvenient may involve considerations that are difficult of actual proof under the rules of evidence in force in courts of law. Furthermore, the matter may be dependent upon considerations of executive and governmental policy with respect to which a coordinate branch of the government should not make inquiry.

Not infrequently, persons charged with the enforcement of law consider that the objects of a particular statute will be better served through the medium of a civil proceeding than by a criminal prosecution. The thought behind any such determination is one of practicality and convenience. The opinion formed as a result of the officer's conception of his duty may be a mistaken one, but, so

long as it is formed in good faith and honest discretion, it is not for the courts to pass judgment upon the validity of the reasons for its formation. I hold, therefore, that in justifying the procedure here adopted the government need do nothing more than prove that the Secretary was of opinion that the prosecution authorized by the statute is impracticable or inconvenient. And this was done.

The proof does not show why it was that Gossel, who went to Germany as a seaman on the Yorck, came back to the United States on the Bremen. But this, I think, is of small moment. The Bremen might have discharged any duty incumbent upon it with respect to returning Gossel to this country by complying with the direction of the immigration officials to deliver him at Ellis Island.

The government may have a decree.