ERNEST BUSBOOM, APPELLEE, V. CAPITAL FIRE INSURANCE COMPANY, APPELLANT.

FILED MARCH 22, 1924.   No. 22726.

1. **Insurance:** AUTHORITY OF AGENT: SUFFICIENCY OF EVIDENCE. Evidence as to authority of an insurance agent to receive payment of a premium note examined, and *held* sufficient to sustain a verdict in the affirmative.

2. ———: MISSTATEMENTS IN APPLICATION. "An insurance company is liable on its policy issued on a written application misstating the facts, where such misstatements were written in the application by the company's agent, the insured having correctly stated the facts and acted otherwise in good faith, not consenting to or knowing of the misstatements." *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554.

3. ———: ———. The mere acceptance by the assured of a policy of insurance containing false statements from the application will not charge the assured with the adoption of such statements as his own, and thereby make it his duty to notify the company thereof.

APPEAL from the district court for Cheyenne county: LEWIS H. BLACKLEDGE, JUDGE. *Affirmed.*

*McCarty & Hager*, for appellant.

*Kepler & Kratz, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and DAY, JJ., REDICK, District Judge.

REDICK, District Judge.

Action for loss under a policy of fire insurance upon a threshing machine. The Capital Fire Insurance Company, having its principal place of business at Lincoln, Nebraska, was represented by Lavoni & Son as agents for the writing of insurance at Sidney, Nebraska. Plaintiff, Ernest Busboom, was a farmer, and while out in the field was solicited by Carl Lavoni, an employee of Lavoni & Son, and J. H. McNew, district manager of defendant, to take out a policy of insurance on the thresher in question. McNew wrote out the application and the plaintiff signed it, together with a note for the premium in the sum of $52 payable September 1, 1921, at the home office of the company. McNew and Lavoni then went to the yard where the thresher was located, obtained the numbers and some other details which were inserted in the application by McNew, and in due time the policy in suit was mailed to the plaintiff. Prior to the maturity of the note, the company sent plaintiff two

notices to pay the same, but it was not paid when due. On September 21, 1921, plaintiff paid to Carl Lavoni $52.21, being the amount due upon said note with interest. Carl was not the agent of defendant for any purpose, but turned the money over to Lavoni & Son, who on September 22 mailed a check for said amount to defendant at Lincoln, with letter of transmittal requesting the return of the note to them. If the check was mailed at Sidney before 6:40 p. m. on the 22d, it should have arrived in Lincoln at 10:50 of the 23d by usual course of mail, but, as evidenced by the receiving stamp of the company, it did not arrive until the morning of the 24th of September, when it was accepted by defendant and the note mailed to Lavoni & Son. Some time on September 23 the threshing machine and other articles covered by the policy were destroyed by fire, and notice thereof given the defendant on the 25th or 26th, and defendant thereupon caused an investigation to be made by their agent at Sidney, and, upon receiving his report, returned the sum of $52 to the plaintiff, the matter of the small amount of interest being overlooked, but which was tendered upon the trial.

Defendant presented two defenses upon the trial: (1) That Lavoni & Son were not the agents of the defendant for the purpose of collecting said note and had no authority from said defendant to receive payment thereof; and (2) that plaintiff in said application falsely represented that there were no incumbrances upon the property insured, whereas in truth and in fact there were three chattel mortgages past due thereon. The case was tried to a jury and resulted in a verdict and judgment for the plaintiff for the full amount of the policy less the premium returned, and defendant appeals.

1. As to both defenses, the contention is that the verdict is not supported by the evidence, and we will first consider the one relating to the agency of Lavoni & Son. The evidence of defendant leaves no doubt that the collection of premium notes was not within the general duties of Lavoni & Son, but there is evidence that sometimes they

did collect such notes and transmitted to defendant, and that other agents did the same, and such remittances were accepted.

"Whether the relation of principal and agent exists between two parties is generally a question of fact, and while it is not necessary to prove an express contract between the parties to establish such relation, either that must be done, or the conduct of the parties must be such that the relation may be inferred therefrom." *Bankers Life Ins. Co. v. Robbins*, 53 Neb. 44.

It is the almost universal custom for the assured to pay the premium to the soliciting agent, and the fact that the note was payable at the company's office at Lincoln did not preclude payment to defendant's agent elsewhere. It would seem, therefore, that the transaction in question was in the ordinary course, and that under ordinary conditions the acceptance of the money from the agents would bind the insurance company on the principle of the agent's apparent authority and that of ratification. But defendant contends that, when they accepted the money, they were not aware that a loss had occurred, which fact is clearly shown by the evidence, and that if they had known of the loss they would not have accepted the money. This proposition would have great force if it were claimed that by the receipt of the money the agent had waived some provision of the policy or had estopped the defendant from making some defense which then existed; as, for example, if the loss had occurred before payment. But we think that the fact of the loss intervening between the payment to Lavoni and the receipt of the money by defendants is not pertinent upon the question of agency here presented. The position is hardly tenable that Lavoni & Son were authorized to receive the money if no loss had occurred, but were not so authorized because of that circumstance taking place subsequently. It cannot be doubted but that, if the loss had occurred at any time after the receipt of the money by defendant, no question of the agent's authority would have arisen, and if in such case the evidence would be sufficent

to sustain the authority of the agent at the time it was paid, we are unable to perceive how such authority can be destroyed by something occurring subsequently. The finding of the jury was for the plaintiff on this issue and is sustained by sufficient evidence.

2. The application contained the following: "Incumbrance on the above described property, $ no." And it contained the following warranty: "I further warrant that all answers to above questions as shown herein are true, * * * and I further warrant that no one except the signer or signers hereof has any interest in the property above described, except as stated in the application, either as mortgagees or otherwise."

The plaintiff testified as to what occurred at the time the application was written up by defendant's agent McNew, as follows: "Q. Just state what was asked you by the agents. A. They asked me whether I had anything against this machine, and I said there was, and they asked me what it was, and I told them I had two small mortgages against it, that I didn't think they were on record; and he just branched off and said, 'If they are small we will not pay any attention to that.' He let it go, and he didn't put it on."

With reference to this matter, McNew testified that he got the information from which the application was prepared from the plaintiff, and that he stated truthfully in the application the information given him; "could not positively say whether I read it to him or not. I prepared the application and asked the questions and completed it and handed it to him; could not say whether I read it to him or left it to him to read." Plaintiff testified that he did not think the application was read over to him, but could not remember. There is no positive evidence that the plaintiff knew how the answers were put down in the application; at any rate this was a question for the jury. It appears that at the time of the application there were three mortgages upon the threshing machine, one for $1,237, which also covered 5 cows, 4 heifers, 1 steer, 3 calves, 4

horses, and a lot of farm machinery not included in the policy of insurance; also one for $429.10, which also covered one Model 83 Overland Automobile and one Titan engine not covered by the policy; also one for $400 on the Avery separator alone, which appears to have been given to a former partner of plaintiff for his half interest in the separator, but which mortgage plaintiff claims had been settled and paid off, although this is disputed by the mortgagee. The existence of these mortgages was undoubtedly a material fact which, if known, would have prevented the issuance of the policy. It is clearly established by the evidence that the policy would not have been issued by the insurance company if it had known of these chattel mortgages; and if false representations with reference thereto were made by the plaintiff a perfect defense to this action is made out. It seems, however, that the plaintiff, when asked the question as to incumbrances, stated to defendant's agent that there were two small mortgages upon it; plaintiff testifying that he considered them small mortgages from the fact that they covered considerable other property, and that he did not mention a third mortgage because he understood it had been paid. If plaintiff's version of the conversation is correct, he was not called upon at that time to more definitely describe the mortgages. McNew, by his testimony quoted above, inferentially denied the making of these statements by plaintiff, but does not make any specific denial thereof. Carl Lavoni, the other person present at the time, was not called as a witness by either party. The question, then, whether or not plaintiff gave the information was one of fact for the jury, who found for the plaintiff. The situation we must assume, then, is that the agent of the defendant who prepared the application was notified by the plaintiff of the existence of two mortgages upon the subject of insurance, but considering them unimportant wrote the answer "no" in the application. Such a situation is not new in this state, and it has been held that, where the applicant makes a truthful dis-

closure as to the situation of the property relative to incumbrances and the solicitor of the insurance writes false answers in the application, he acts as the agent of the insurance company, and the latter is estopped from claiming the representation is false.

In *State Ins. Co. v. Jordan*, 29 Neb. 514, it was held: "Where it appeared that the insured was unable to read and write, and the application was made out by the agent of the insurance company, who testified that he read it over to the insured, while the latter testified that the agent did not so read it, and he had no knowledge of its contents, there being thus a conflict of evidence on this point, and the jury having found for the plaintiff, *held*, that if the insured was not aware of the contents of the application, he would not be bound by statements therein."

And in *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554; "An insurance company is liable on its policy issued on a written application misstating the facts, where such misstatements were written in the application by the company's agent, the insured having correctly stated the facts and acted otherwise in good faith, not consenting to or knowing of the misstatements."

And in the opinion with reference to the *Jordan* case it is stated, it is true, that in that case it appeared that the insured was unable to read. But we do not think the distinction in the cases material. When the insured states the facts correctly to the company's agent, he is not bound to exercise vigilance thereafter to determine whether the agent is exercising care or good faith in his transactions on behalf of the company. In other words, the company is estopped from seeking to avoid its contract because of a mistake or fraud committed by its own agent, the insured having acted in good faith, although, perhaps, somewhat negligent. It is not necessary to cite further cases. We are of the opinion that those already referred to rule the case at bar, and that the finding of the jury cannot be disturbed.

A further contention of defendant is that, when the

plaintiff accepted the policy of insurance which contained a copy of the application with the false answer referred to, it was his duty to read it, and whether he did or not he was bound to know of the false statement in the application and notify the insurance company thereof, and that having failed to do so he cannot now be heard to deny that the statements thus made are his own, and cites *Hayes v. Automobile Ins. Exchange,* 126 Wash. 487, which sustains that proposition. The case might be distinguished, in that it appeared that the applicant signed a blank application and the agent of the insurance company filled in the false statements, and the policy contained the express provision: "By the acceptance of this policy * * * the insured makes and warrants to be true each of the following statements, and the Exchange hereby issues the policy, relying upon the truth thereof." The court distinguishes that case from those wherein the assured is held not responsible where the company's agent has advised him that the statements are proper ones to make, and from *Eaton v. National Casualty Co.,* 122 Wash. 477, wherein the agent incorrectly recorded truthful answers given by the assured. We think that case is not authority in this. Moreover, in *Insurance Co. v. Bachler,* 44 Neb. 549, it was held that the assured's acceptance of the policy under the circumstances of that case was not a representation that the insured property was free from incumbrance. We think it would be too harsh a rule in all cases, and especially under the circumstances shown in the case at bar, to hold that the mere acceptance by the assured of a policy containing misstatements of fact bound him thereby as false representations made by him.

The objection to a portion of instruction No. 2 given by the court, quoted in appellant's brief, is not well taken when the entire instruction is considered. The jury were plainly told in that instruction that, if Lavoni & Son were not the agents of the defendant, authorized to receive the money, and the money did not reach defendant's home

office at Lincoln until after the fire had occurred, the plaintiff could not recover.

All questions of fact were fairly submitted to the jury, and finding no error in the record, judgment must be affirmed.

AFFIRMED.