**BANK SAV. LIFE INS. CO. v. BUTLER.***
No. 8671.

Circuit Court of Appeals, Eighth Circuit.
Feb. 24, 1930.

E. R. Sloan, of Topeka, Kan., and G. W. Humphrey and James W. Broaddus, both of Kansas City, Mo., for appellant.

Fred A. Boxley and Thomas E. Walsh, both of Kansas City, Mo., for appellee.

Before STONE and GARDNER, Circuit Judges, and MILLER, District Judge.

GARDNER, Circuit Judge.

This action is based on an insurance policy issued by the appellant, defendant in the lower court, on the life of Sylvester Butler, husband of plaintiff. The policy contains the following, among other, provisions: "This policy, if not previously surrendered, may be reinstated at any time after date of default, upon written application therefor accompanied by evidence of insurability satisfactory to the company, and upon the payment of all arrears of premiums with interest thereon." The policy bears date September 22, 1925. It is in the sum of $5,000, and plaintiff is named as beneficiary therein. The first premium was paid, but the second premium, which fell due September 22, 1926, was not paid, and the policy, by its terms, lapsed. On December 5, 1926, the insured became ill with what was diagnosed at that time by his

*Rehearing denied May 17, 1930.

attending physician as appendicitis. On the evening of December 7th, he was removed to a hospital, where he underwent a surgical operation which disclosed that his trouble was not appendicitis as diagnosed, but an intestinal ulcer which had perforated the intestines, causing general peritonitis. Plaintiff was present at the hospital prior to, at the time of, and immediately following the operation, and was advised by the attending surgeon that her husband was dangerously ill but that there was a chance for his recovery.

On December 9th, the plaintiff went to the office to get her husband's mail, and, among the letters, was one from the insurance company containing what is referred to in the record as a "danger signal," saying that Mr. Butler's insurance had lapsed. She then went to the office of the company's general agent in Kansas City with a friend of Mr. Butler's by the name of August Eyssell, a pharmacist, who had heard some talk about Mr. Butler's insurance. Mr. Butler had been working for the Globe Tire Company, which concern occupied a room at 617 Grand avenue, rented from Mr. Eyssell.

Plaintiff testifies: That she inquired of this agent whether she could have Mr. Butler's insurance policy reinstated, that he was sick and in the hospital. That the agent asked whether or not Mr. Butler was sick at the time the policy lapsed. That she informed him that he was a well man until Tuesday, December 7th, to which he replied, "All right," went into another office, got a reinstatement blank, sat down and filled it out himself without asking plaintiff any further questions, presented it to her for her signature, suggesting that she had better sign her husband's name together with her own, and that, without reading the application, she signed the name of her husband, as well as her own, thereto. That Mr. Eyssell handed the agent a check for $90.95 covering the premium for reinstatement of the policy, whereupon the agent handed her a receipt.

Mr. Eyssell testifies that he offered to pay the premium if the policy could be renewed, and that he went with Mrs. Butler to call upon the company's agent. He says:

"I introduced myself to Mr. Ashbrook (the agent) and told him that Mrs. Butler had a policy of Mr. Butler's with that company which had lapsed and we wanted to find out whether it could be renewed, that Mr. Butler was sick right now and at the hospital, had been operated on.

"Q. Did you say that to this man? A. I told him that, yes. He says, 'However, in a case of that kind we reinstate,' and then he went in this other little office and got the blank. He says, 'We have a regular form on that' and came out with that blank and sat down there, started to fill out, and I said 'Now, before you start filling that out, we want you to understand that Mr. Butler is a sick man, he is at the hospital and has been operated on.' 'Well, was he sick at the time the policy lapsed?'

"Q. How is that? A. He asked Mrs. Butler whether he was sick at the time the policy lapsed; Mrs. Butler says, 'No, he wasn't sick then.' 'Well, that is all right, then, just so he wasn't sick when the policy lapsed; a person can always get well when they are sick at the hospital, always have a chance.' So he filled out the blank, without asking any questions; and we had told him before, warned him—

"Q. After he filled out the blank then did he ask Mrs. Butler to sign it? A. He just handed it over to her right there at the desk, he says, 'Now, you sign Mr. Butler's name there and by you, and that is all that is necessary.'"

The application contains the following: "I hereby make application for the reinstatement of said policy and warrant as follows: That since the day of my examination for the above numbered policy I have had no sickness or ailment whatever, except as follows: None, nor have I suffered any injury of any kind, except as follows: None, and that I have not been attended, nor prescribed for, by any physician, except as follows: None. I further agree * * * that if any of the statements or warranties contained herein shall prove to be incomplete and untrue, then the reinstatement shall be ipso facto null and void."

It should be stated that the testimony of the plaintiff and the witness Eyssell is denied by defendant's agent, in so far as it relates to the disclosures made to him, but, in the view we take of the case this is not a material consideration.

The insured died December 12, 1926. Proper proofs of death were made and presented to the defendant company, and, liability being denied, this suit was brought. At the close of plaintiff's testimony the defendant moved for a directed verdict on the ground of insufficiency of the evidence. This motion was denied, whereupon the defendant offered its testimony, and at the close of all the testimony motion to direct a verdict was renewed by the defendant and denied by the court.

On this appeal it is urged (1) that the court erred in refusing to direct a verdict for the defendant at the close of plaintiff's testimony; (2) that the court erred in refusing to direct a verdict for the defendant at the close of all the testimony; and (3) that the court erred in its charge to the jury. As to the first assignment of error, it need only be said that, as the defendant on the denial of its motion made at the close of plaintiff's case, introduced testimony in support of its defense, this constituted a waiver of the exception.

It is strenuously urged that the court should have directed a verdict in favor of the defendant at the close of all the testimony. By section 6143, Revised Statutes of Missouri, it is provided that: "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured." It is claimed that the reinstatement of the policy was secured through false representations made by the plaintiff in the application for reinstatement as above set forth, and hence the policy was avoided. It is, however, contended on behalf of the plaintiff that no misrepresentations were made to the company, but that the facts were fully and in good faith disclosed to the general agent of the company, and that, with full knowledge of these facts, he accepted the premium on the policy and caused it to be reinstated.

In view of the verdict of the jury, we must accept plaintiff's version as to the facts. However great the suspicion that the jury may have, through prejudice or sympathy, or both, disregarded the weight or preponderance of the evidence, this court is without power to weigh the evidence, but can only determine whether the verdict is sustained by substantial evidence. The remedy for relief from a verdict which is claimed not to be sustained by the weight of the evidence is in the hands of the trial court, and it appears in this case that the trial court, on motion for a new trial, set aside a prior verdict. Of course, if the defendant knew all the facts, then it could not have been misled by statements which were embodied in the application by its own general agent.

The author of the article on "Insurance" in 32 C. J. 1333, states the following general rule: "Where the facts have been truthfully stated to its agent but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatement in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured. Among the reasons given for this rule are: That the company assumes to draft the papers so as to meet its own views as to their requirements; that the agent is the agent of the company; that his knowledge will be imputed to the company; that the statements in the application are in fact his statements; that the company is estopped from controverting their truth; and that the evidence does not constitute an attempt to vary a written contract by parol, although there is some authority to the contrary based on the theory that in making the application, the solicitor is acting as agent of the applicant, or that the introduction of evidence to show the fact would violate the rule excluding parol evidence to alter a written contract."

The same rule is stated by the author of the article on "Insurance" in 14 R. C. L. p. 1174, where it is said: "It is the genral rule that an insurance agent in making out an application for insurance acts as the agent of the insurer and not of the insured, and if the insured makes proper answers to the questions propounded the insurer cannot take advantage of a false answer inserted by its agent, contrary to the facts as stated by the applicant."

In the article on "Life Insurance," 37 C. J. 502, the rule is specifically applied to applications for reinstatement of a lapsed policy. It is there said: "In the absence of fraud on the part of the insured, insurer cannot avoid the reinstatement because of false answers to questions inserted in the application by its agent where insured had given the correct information to the agent." To the same effect, see Union Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; Am. Life Ins. Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593; Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 89, 33 L. Ed. 341; McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Stipcich v. Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 515, 72 L. Ed. 895; State ex rel. Ins. Ass'n v. Bland, 316 Mo. 559, 291 S. W. 499; Den Hartog v. Home Mut. Ins. Ass'n, 197 Iowa, 143, 196 N. W. 944; Busboom v. Capital Fire Ins. Co., 111 Neb. 855, 197 N. W. 957; Schmitt v. Mass. Protective Ass'n, 170 Minn. 60, 212 N. W. 5.

The Missouri statute above quoted specifically provides, not only that the person

soliciting an application for insurance shall not be regarded as the agent of the insured, but that he shall be regarded as the agent of the company. In view of the provisions of this statute, there were no limitations on the authority of the company's agent, Ashbrook, affecting the subject-matter of this controversy.

A similar statute was considered by the United States Supreme Court in Continental Life Insurance Co. v. Chamberlain, supra, where it is said: "This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case. * * * In his capacity as agent of the insurance company, he filled up the application—something that he was not bound to do, but which service, if he chose to render it, was within the scope of his authority as agent. * * * His act in writing the answer, which is alleged to be untrue, was, under the circumstances, the act of the company."

In the case of Stipcich v. Insurance Co., supra, evidence was offered to the effect that the plaintiff had communicated to the insurance company's agent information as to an ailment developing after the application for the insurance had been made, but before delivery of the policy. This proffered testimony was excluded and a verdict directed for the defendant. A statute of Oregon (Or. L. § 6435), where the case arose, provided that "any person who shall solicit and procure an application for life insurance shall, in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

The court held that provisions of this statute were controlling when inconsistent with the terms of the policy, and pointed out that the statute not only provided that the soliciting agent did not represent the insured, but that he did represent the company. It is there said: "Here the statute in terms defines the scope of his agency to the extent that he is stated to represent the company 'in all matters relating to such application * * * and the policy issued in consequence' of it. We need not inquire what are the outer limits of that authority, but we think this language plainly makes him the representative of the company in connection with all those matters which, in the usual course of effecting insurance are incidental to the application and the delivery of the policy. * * * To say that under this statute the company's agent to solicit and receive the application and deliver the policy is not its agent also to receive disclosures which supplement the application and which vitally affect the validity of the insurance if not disclosed, is to disregard its language and ignore the obvious purpose of such legislation to require the company to provide some agency within the state with which the insured may safely deal in matters relating to his application. See Continental Life Insurance Co. v. Chamberlain, supra."

The proof in the instant case is to the effect that Ashbrook was the general agent of the company, and it seems inevitably to follow that his knowledge was the knowledge of the company.

Great reliance is placed by counsel for defendant on what is said in the opinion in New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 843, 29 L. Ed. 934, but that case ultimately turns on the limitation of the authority of the agent. In the course of the opinion it is said: "The present case is very different from Insurance Co. v. Wilkinson, 13 Wall. 222 [20 L. Ed. 617], and from Insurance Co. v. Mahone, 21 Wall. 152 [22 L. Ed. 593]. In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. * * * Where such agents, not limited in their authority, undertake to prepare applications, and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company."

The case of Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, is also urged as an authority by counsel for defendant. This case is readily distinguished from the instant case. As said in the opinion by Mr. Justice Stone, in Stipcich v. Insurance Co., supra: "Much reliance is placed by respondent on Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, where a somewhat similar statute was involved. But there answers known by the insured and the agent to be false were written into the signed application by the agent. Such fraudulent representations *known and participated in by the insured* obviously could not have estopped the company, but there is nothing in the present case to suggest that the insured was a party to or intended any concealment from the company."

It must be borne in mind that there is no claim in this case that the agent of the de-

fendant acted in collusion with the plaintiff, and, in view of the verdict of the jury, we must assume that the plaintiff did not know that the application for reinstatement did not reflect the facts as she had related them to the agent. In arguing that the insurance company was not bound by the knowledge of its agent, counsel say: "Was the agent clothed with authority to perpetrate a fraud on the company?" The defense in this action is bottomed on a charge of misrepresentation, and no fraud on the part of the agent is charged, nor, indeed, does the evidence warrant a conclusion that he was guilty of fraud. It appears that it was his view that, if the insured was in good health at the time the policy lapsed, the policy could properly be reinstated, notwithstanding the subsequent bad health of the insured. In other words, he took the controlling date to be that on which the policy lapsed and not that on which the application for reinstatement was made.

The plaintiff, responding to this charge of misrepresentation, offered testimony to show that she fully disclosed the facts to the defendant's agent, and such disclosure, in our opinion, estops the insurance company to dispute its liability upon the policy under the circumstances disclosed in this case.

By the third assignment of error one of the instructions given by the court is challenged. The questions involved in defendant's contention with reference to this instruction have already been considered and decided adversely to defendant's contention in connection with our consideration of the assignment challenging the sufficiency of the evidence. It is therefore unnecessary to give them further consideration.

There was, in our opinion, no error either in the ruling of the court denying defendant's motion for an instructed verdict, or in the instruction complained of, and the judgment of the lower court must therefore be affirmed.