## MASSACHUSETTS PROTECTIVE ASS'N v. ALLEN.

### No. 1648.

District Court, W. D. Missouri, W. D. Nov. 20, 1931.

Richard S. Righter (of Lathrop, Crane, Reynolds, Sawyer & Mersereau), of Kansas City, Mo., for plaintiff.

Chas. Miller and Omar Robinson, both of Kansas City, Mo., and Edward Myers, of Appleton City, Mo., for defendant.

OTIS, District Judge.

The plaintiff brings this suit in equity praying the cancellation of a certain policy of health and accident insurance issued by it to the defendant upon the latter's application, dated at Colorado Springs, Colo., June 18, 1928. The theory of the bill is that in the application false and fraudulent representations were made by the defendant. It is alleged that the policy would not have been issued had a true statement of facts been made by the defendant. More particularly it is alleged that whereas the defendant had, prior to his application, suffered from diseases known as "rheumatism," "acute rheumatic heart," and "myocarditis," he fraudulently concealed those facts from plaintiff, and in answer to a question in the application as to whether he had "been disabled or consulted a physician within the past five years" answered only that in April, 1925, he had been operated on for rupture from which he had had a complete recovery and that in April, 1929, he had had a tonsil operation from which he had had a complete recovery, and that in answer to a question in the application, "Do you regard yourself as in good health and sound physical condition?" he answered, "Yes."

The answer of the defendant sets up that the defendant did, in answer to questions propounded to him by the plaintiff's agent, give the agent, and through the agent to the plaintiff, full and truthful information concerning disabilities theretofore suffered by him. More particularly it is alleged in the answer that he advised the plaintiff, through its agent, that he had a heart attack which had been diagnosed as acute rheumatic heart and that he had had a tonsil operation as a

part of the treatment for acute rheumatism of the heart and that at the time of the application he believed himself to be in good health and sound physical condition and so represented to the plaintiff's agent. It is further alleged in the answer that the blanks in the application were filled out by the plaintiff's agent and that the defendant signed the application without having read it and assuming that the plaintiff's agent had inserted in the application the information which the defendant had given him. It is alleged in the answer that the plaintiff had all of the information which its agent had received from the defendant and that it is now estopped by reason of such knowledge to assert that it did not know of the disabilities suffered by the defendant before the time of the application. It is alleged in the answer that the contract here is a Colorado contract, subject to the laws of Colorado, and that by the laws of that state, as construed by the Supreme Court thereof, an insurance company is bound by information given to its agent by an applicant for insurance, notwithstanding the applicant has signed a written application in which, without his knowledge, false or incorrect answers to questions asked are inserted by the agent. Further the answer denies any fraud, deceit, or misrepresentation on the part of the defendant.

■ 1. At the trial of the case the testimony of five witnesses was presented, two for the plaintiff and three for the defendant. The defendant testified in person. Other witnesses testified by depositions. In addition to the testimony of witnesses, certain exhibits were offered and received in evidence.

The principal controversy of fact developed by the testimony was as to whether the defendant at the time his application for insurance was solicited by the plaintiff's agent truthfully stated to him that in 1927, prior to the time of his application, he had suffered from "acute rheumatic heart." In the application signed by the defendant there was no reference to the fact that the defendant had in 1927, or at any other time, suffered from that disease.

Plaintiff's agent testified that, as to the questions in the application touching the previous health of the defendant, he (the agent) wrote in the application exactly what was stated to him by the defendant. He testified that the defendant said nothing concerning any previous affliction with his heart. As against this testimony, the defendant said he had given the plaintiff's agent exact information as to his previous heart attack and had told him exactly what was said to him by his physician. In this defendant was corroborated by two other witnesses, who testified they were present when the application was taken and that they heard the defendant give plaintiff's agent the information to which he testified. Defendant testified that he did not read the application after it was filled out by the plaintiff's agent and that he did not know that it did not contain a truthful summary of the answers he had given to the questions asked.

The preponderance of the evidence supports the contention of the defendant that he did truthfully report his health condition and the heart disabilities he had suffered to the agent.

■ A question of fact, of course, is not to be decided by the number of witnesses, but I am convinced from the evidence upon the subject that the defendant did make truthful and full statements. Of all the witnesses the defendant alone appeared in court in person. His appearance, conduct, and demeanor upon the witness stand were those of an honest man. He answered questions frankly and with no apparent intention to mislead. When he was in good health and able to engage in employment, he was repeatedly promoted by his employer to positions of truth and importance. That tended to corroborate his credibility. When it is considered that his positive statement concerning the vital point here was supported by two others who had no interest in the case at all, and when it is further considered that the reliability of the plaintiff's agent is made somewhat questionable from his testimony in his deposition that as to certain questions in the application he had written down answers purporting to have been made by the defendant when he had not even asked the defendant the questions it was his duty to ask, when all of these things are considered, the question of fact here must be resolved in favor of the defendant.

2. Upon all of the testimony I make the following finding of facts:

(1) I find the fact to be that the defendant was solicited for an application for insurance by the plaintiff's agent.

(2) I find the fact to be that the defendant signed the application offered in evidence by the plaintiff after the answers to the questions in the application had been written out by the plaintiff's agent, and I find that the defendant did not read the application or the answers written therein at the time he

signed the application or at any time before the policy of insurance was delivered to him and the first premium paid by him.

(3) I find the fact to be that prior to the making of the application, and in the year 1927, the defendant was afflicted with what was then diagnosed as "acute rheumatic heart," and that the defendant had full knowledge of that fact at the time his application was taken. I find that no reference to this previous heart disability is contained in the written application or in the answers therein written by the plaintiff's agent, although certain of the questions contained in the application called for a revelation of this previous heart attack.

(4) I find the fact to be that the defendant made a truthful statement to the plaintiff's agent that he had before the time of the application, and in 1927, suffered from and been treated for "acute rheumatic heart," and that he advised the plaintiff's agent that his physician had informed him that his heart condition was probably due to infected tonsils, and that he further informed the plaintiff's agent that acting upon the advice of his physician he had, before the time of his application, had his tonsils removed by surgical operation.

(5) I find the fact to be that the defendant in answer to questions contained in the application informed plaintiff's agent that he was at the time of the application in good health, and I find that the defendant at the time of the application believed that he was in good health.

(6) I find the fact to be that the defendant's application was taken in the state of Colorado, and that the contract of insurance issued upon his application is a Colorado contract, and that there was at the time of the taking of the application in full force and effect certain statutes of the state of Colorado, among others, section 3566, Mills' Annotated Statutes of 1912 (Courtright's Mills Ann. St. 1930, § 3570, C. L. § 2510), and section 3553, Courtright's Mills Annotated Statutes (1930), C. L. § 2491.

■ 3. It goes without saying that plaintiff has made a prima facie case. It has proved that the defendant signed a written application for a policy of insurance, and that, with knowledge of a previous serious heart disability (being the same disability as that for which he has since sought benefits under the policy), in answer to pertinent questions, he made no answer revealing this previous disability and the treatment he received therefor. This was a fraudulent concealment of so serious a nature as, in the absence of a showing contra, would entitle plaintiff to a cancellation of the policy. Has this case been overthrown by the defense?

■ The theory of the defense is that the insured gave truthful information to the plaintiff's agent; that the knowledge of the agent thereby acquired was the knowledge of his principal, the plaintiff; that the plaintiff is now estopped to assert a fraudulent misrepresentation when it knew the truth at the time it received the application. The theory of law relied on is that stated thus in 32 Corpus Juris, 1333: "Where the facts have been truthfully stated to its agent, but by his fraud, negligence or mistake are misstated in the application, the company can not, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured."

The general rule stated in Corpus Juris is supported by a multitude of decided cases, including cases decided by the Supreme Court of the United States. It will be noted, however, that it is not in every case in which truthful answers are made by an applicant for insurance to an insurance agent and are misstated by him in the application that the insurer cannot assert fraudulent misrepresentations as against the insured. The general rule applies only where the agent is acting within the scope either of his real or his apparent authority. If his authority is limited and if one of the limitations is that only statements made in a written application are binding on the insurer, then the insured cannot assert estoppel.

Deferring for the present consideration of the effect of Colorado statutes, it must be said that this case is almost exactly paralleled by the case of New York Life Insurance Company v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 842, 29 L. Ed. 934. In that case, as here, the insured signed an application filled out by the agent of the insurer. In that case, as here, there were representations in the application so material to the risk that if they were false their falsity was sufficient to avoid the policy. In that case, as here, the insured contended he did not make false representations but that his answers were truthful. In that case, as here, the insured contended that he did not read the application, although he signed it. In that case, as here, there was in the application an agreement signed by the insured

that no statements or representations made to the agent should be binding on the company unless reduced to writing and included in the application. In no single respect were the facts of that case essentially different from the facts of this. It was held by the Supreme Court that in such a state of facts the insured could not recover against the insurer. It was said: "It was his [the insured's] duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove, not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed.

As I see it there is only one possible escape from the doctrine of New York Life Insurance Co. v. Fletcher, and that is that the provision in the application by which the parties agree to the limitation of the agent's authority is, by virtue of some state statute, void and, therefore, not a part of the agreement. This is the escape which the defendant seeks. The contention is that by virtue of Colorado statutes the authority of plaintiff's agent who took defendant's application was a general, not a limited, authority.

This same theory was successfully asserted in the Court of Appeals for the Eighth Circuit and is discussed in Bank Savings Life Insurance Company v. Butler, 38 F.(2d) 972, 974. The statute there considered, a Missouri statute (Rev. St. 1919, § 6143), provided that "any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured." The effect of that statute, said the Court of Appeals, was this,—"that there was no limitation on the authority of the company's agent."

The same theory was successfully asserted in the Supreme Court of the United States and is discussed by that court in Continental Insurance Company v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341. The statute there, an Iowa statute (Laws 1880, c. 211, § 1), was almost identical with the Missouri statute just referred to. It provided that: "Any person who shall hereafter solicit insurance, or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding." The effect of this statute was held by the Supreme Court to be that there was no limitation on the authority of the insurance agent.

As was said by the Court of Appeals for the Eighth Circuit in Bank Savings Life Insurance Company v. Butler, supra, discussing New York Life Insurance Company v. Fletcher, supra, "that case ultimately turns on the limitation of the authority of the agent."

Now the Colorado statute (section 3553, Courtright's Mills' Annotated Statutes of Colorado, vol. 2 [C. L. § 2491]) which is in point in this connection and which, in part, is almost identical with the corresponding Missouri and Iowa statutes, reads as follows: "Any person who shall solicit and procure an application for insurance shall, in any controversy * * * between the parties to the contract and the beneficiary, if any, be held to be the company's agent, whatever conditions or stipulations may be contained in the policy or contract. * * * But no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

But clearly there is a great difference be-

tween the Colorado statute and the Missouri and Iowa statutes discussed in the cases referred to. The effect of the Missouri and Iowa statutes, as they have been construed, is to free an insurance agent from any limitations sought to be imposed on his authority by his principal, even although knowledge of that limitation is brought home to the insured. The Colorado statute, however, *affirmatively provides for a clear and unequivocal limitation of authority*. Reasonably it may be surmised that this affirmative limitation was put in the statute at the instance of insurance companies in the light of the decision in Continental Insurance Company v. Chamberlain, supra, for the purpose of preserving in Colorado the general law as declared in New York Life Insurance Company v. Fletcher. Here is an express provision to the effect that "no statement or declaration made to * * * agent * * * not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

The language used in the Colorado statute is plain and unambiguous. It is inconceivable to my mind that it does not have the effect of destroying the defense made here. It does not make void, but on the contrary preserves, the agreement which the insured made with the insurer, which he is presumed to have read when he signed the application, the agreement that "verbal statements between the agent and yourself (the insured) are not binding upon the association unless accepted by the association in writing." It does more than preserve that agreement. It makes such an agreement between the parties, even although they themselves had not made it. In the light of that statute, how is it possible to argue that the plaintiff here is estopped by the knowledge its agent had? The statute says, almost in so many words, that the insurer shall not be estopped by such knowledge unless that knowledge was communicated to it in the written application.

■ In a memorandum submitted to the court by defendant's learned counsel, it is said by them: "We think it can successfully be asserted that it (the question here) is not a question of notice or knowledge of the insurance company, but * * * is a question of fraud on the part of the agent * * * and the cases that have come to our attention have all held that the insurance company is liable for such acts of its agent, who is, in so far as this feature is concerned, the alter ego

of the insurance company, and it cannot profit by its own fraud or misfeasance."

A similar contention is dealt with specifically in New York Life Insurance Company v. Fletcher, where it is said: "It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract, which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. *In such a case, assuming that both parties acted in good faith, justice would require that the contract be canceled and the premiums returned.*"

It follows that upon whatever theory the defense is based, it cannot prevail against the plaintiff's case. If it is based upon the theory of knowledge of the insurer, resulting from knowledge of its agent, it is overthrown by the fact that the agent had no authority to receive from the insured oral statements not later incorporated in the written application and by the fact that this limitation of authority is presumed to have been known to the insured and agreed to by him. If the defense is based upon the theory that fraud was perpetrated upon both parties to the contract by the insurer's agent, it is overthrown by the fact that the agent had no authority from his principal "to falsify the answers" made, and by the rule of law that where such a fraud is perpetrated upon both parties by an agent, justice requires "that the contract be cancelled and the premiums returned."

4. From this preliminary discussion of the principles involved, I make the following conclusion of law:

As a matter of law it was the duty of the defendant to read, and he will be presumed to have read, the application and the answers therein made and signed by him. He is presumed to have read in the application the limitation upon the authority of the agent, to wit, that no oral statements made to the agent, and not reduced to writing in the application, were binding upon the plaintiff. The defendant agreed, and is bound by his agreement, that no statements made by him and not reduced to writing were binding upon the plaintiff. This agreement, incorporated in the application and limiting the au-

thority of the agent of plaintiff, is valid and in conformity with the law of the state of Colorado and in no way nullified by that law. Since the representations made in the written application and signed by the defendant were false as to material matters affecting the risk, the plaintiff as a matter of law is entitled to the cancellation of the policy.

5. A decree conforming to this opinion and granting the relief prayed may be prepared by counsel for the plaintiff and submitted to the court for approval and entry.