PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA v. PARSONS et al.

No. 3572.

Circuit Court of Appeals, Fourth Circuit. April 25, 1934.

J. Bat Smathers, of Asheville, N. C. (Leon A. Hamilton, of Philadelphia, Pa., and Johnson, Smathers & Rollins and T. A. Uzzell, Jr., all of Asheville, N. C., on the brief), for appellant.

J. W. Pless, of Asheville, N. C. (W. C. Berry, of Bakersville, N. C., and J. Will Pless, Jr., of Asheville, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The Provident Mutual Life Insurance Company of Philadelphia (hereinafter called the "Insurance Company") the appellant in this case, filed its bill of complaint in equity in the District Court on April 14, 1933, to secure cancellation of two life insurance policies, with disability benefits, issued to the appellees, Frank Parsons, the insured, and Claude Wilson, as beneficiary. The premiums paid on the policies had been tendered in return to the insured and were paid into court. The ground alleged for the cancellation was a material misrepresentation in the written application for each policy. Both policies contained the now familiar incontestable clause, and the suit was filed within the period allowed for contest. The plaintiff also prayed for an injunction against the prosecution by the insured of suits for recovery of disability benefits which had shortly previously been instituted in the state court. The defendant's answer resisted the cancellation of the policies on the ground that the facts had been correctly stated to the insurance company's soliciting agent. After hearing testimony the District Judge, on controverted evidence, adopted as a finding of fact that the agent had been correctly advised by the insured, and ruled as a matter of law that the Insurance Company was estopped to rely upon the material omission in the application. The appellant's suit was thereupon dismissed.

The record presents three questions for determination: (1) Was there a sufficient amount in controversy to establish the jurisdiction of the District Court in this case; (2) did the trial judge apply the correct substantive law to the case, and (3) if there was jurisdiction of the court and error as to the law, is the plaintiff entitled to an injunction against further prosecution of the suits in the state court.

1. *Jurisdiction of the Court.* This was based solely on diverse citizenship of the parties (28 USCA § 41 (1) which is limited to cases involving more than $3,000 in controversy exclusive of interest and costs. Neither policy was in principal amount for more than $3,000, one being for $2,500, and the other for $2,000; but the two combined exceed the statutory minimum. In our opinion the requirements of the statute are met in this case. It has been so held in similar situations by several District Courts. New York Life Ins. Co. v. Jones, 2 F.Supp. 600 (D. C. W. D. N. C.); Mutual Life Ins. Co. v. Rose, 294 F. 122 (D. C. E. D. Ky.), reversed on other grounds (C. C. A.) 19 F.(2d) 280; Metropolitan Life Ins. Co. v. Dunne, 2 F.Supp. 165 (D. C. E. D. N. Y.). Compare New York Life Ins. Co. v. Marshall (D. C.) 21 F.(2d) 172; Id. (C. C. A.) 23 F.(2d) 225; Columbian National Life Ins. Co. v. Harrison, 12 F.(2d) 986 (C. C. A. 6). The object of the statutory limitation as to amount is intended merely to prevent invoking federal jurisdiction where the amount in controversy is not substantial. While it has been held that separate claims of two or more plaintiffs, each less than the jurisdictional amount, may not be combined to confer jurisdiction (Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 86, 43 S. Ct. 480, 67 L. Ed. 871), nevertheless a single plaintiff having several claims, each less than the jurisdictional amount, may properly combine them for the purpose of establishing the requisite amount in controversy where they can properly be joined in one suit or action. Hughes Fed. Practice, vol. I, §§ 412, 485; Yates v. Whyel Coke Co., 221 F. 603, 606 (C. C. A. 6); Hartford Fire Ins. Co. v. Erie Railway Co. (C. C.) 172 F. 899; Massachusetts Protective Ass'n v. Kittles, 2 F.(2d) 211 (C. C. A. 5); Baltimore & O. S. W. R. Co. v. United States, 220 U. S. 94, 31 S. Ct. 368, 55 L. Ed. 384. There is no objection to joining in one equity suit both policies for purposes of cancellation, as this is entirely permissible under Equity Rule 26 (28 USCA § 723).

It may also be noted that in addition to the principal amount of each of said policies, payable upon the death of the insured, there were also payable disability benefits in the amount of $25 per month under one policy

and $20 per month under the other, for an indefinite long period, which might possibly have made the total liability under each policy more than $3,000.

The general equity jurisdiction in a case of this kind where the policies contain the incontestable clause and the insured is still living, is well established. Brown v. Pacific Mutual Life Ins. Co., 62 F.(2d) 711, 712; Jefferson Standard Life Ins. Co. v. Keeton, 292 F. 53; Jones v. Reliance Life Ins. Co., 11 F.(2d) 69, all recently decided by this court.

■ 2. *Was the correct substantive insurance law applied by the District Court.* This raises an important question of substantive law affecting life insurance policies. As a matter of general law it must be determined here on the federal decisions, in the absence of a controlling state statute. Fountain & Herrington v. Mutual Life Ins. Co., 55 F.(2d) 120 (C. C. A. 4). The question is presented under the following conditions:

■■ In the written application attached to each policy the insured specifically inquired whether the applicant had pending elsewhere an application for life, health or accident insurance, with a direction to state the amount, company and what .disability benefits. In each case the information given in the application in reply to this question was only "Occidental, $5,000 with disability." Both applications also inquired as to what insurance the applicant carried, with what disability benefits, to which the reply was "$1,000 Atlantic Life and $2500 New England Mutual, both with disability benefits." The application for the first policy was signed by the insured on May 3, 1932, the answers to the questions being then written by the soliciting agent of the Company; and the application for the second policy was signed by the insured in blank a few days later, the date not being inserted at that time. It was forwarded to the home office of the Company where it was filled out in typewriting, copying the information given in the first application. It was dated May 24, 1932, and a copy attached to the policy issued. It is admitted that at the time of signing the application for the first policy the insured, in addition to the pending application for insurance in the Occidental Insurance Company also had pending an application for a policy for $5,000 with disability benefits in the Security Mutual Life Insurance Co., and the policy thereon was actually issued to the insured on May 5, 1932, but no mention thereof is contained in either application, either as a pending application for insurance or an actually issued policy.

Both applications contain the following printed provision immediately above the insured's signature:

"It is hereby declared and agreed (1) that this application consists of two parts and that the answers and statements therein set forth are all complete and true and that this application and any policy which may be issued thereon shall constitute the entire contract between the parties."

One policy was issued under date of May 18, 1932, and the other is dated May 24, 1932. Both policies contain the following provisions:

"This Policy and the application therefor, copy whereof is attached to this Policy and made a part thereof, shall constitute the entire contract between the parties, and, except for non-payment of premium, shall be incontestable after one year from its date of issue if the insured shall be then living, otherwise two years from its date of issue. * * * All statements made by the insured shall, in the absence of fraud, be representations and not warranties, and no such statement shall avoid this Policy or be used in defense of a claim unless it is contained in the application and a copy of such application is attached to this Policy when issued.

"Agents are not authorized * * * to alter or waive any of the provisions of this Policy, nor to bind the Company by making any promise or by accepting any representation or information not contained in the application for this Policy."

The testimony of the insured, which was accepted by the District Judge, although contradicted by the testimony of the agent of the Company, was to the effect that he signed the application for the first policy on the date it bears, May 3, 1932, and answered all questions read to him from the application by the agent including the one specially above mentioned, and in answer thereto correctly informed the agent that he also had pending an application for a policy in the Security Life Insurance Co.; and that he supposed the agent recorded in the application correctly and fully the information given, and that he, the insured, did not in fact read over the application or the answers written therein when he signed it; nor did he read the policy or copy of the application attached thereto when he received it, although he was able to read and understand it. He further testified that he did not apply for the second policy (in the amount of $2,000) when he signed the first application but that a few days later he was persuaded by the agent to

sign a second application form in blank without the understanding on his part that it was intended to be the basis of further insurance, and under the representation by the agent that it was in substance only formal routine; but that nevertheless when the Company approved both applications and issued the second as well as the first policy, he accepted both policies and paid the premiums therefor without at the time reading either the applications or the policies.

The question of life insurance law thus presented may be stated as follows: When the insured gives complete verbal information to the Company's agent but the latter omits a material part thereof in filling out the application, is the insured nevertheless bound by the answers actually contained in the application, where it is signed by him without reading it and where, by the express provisions of the application and the policy, the two constitute the entire contract between the parties and the insured is notified of the limited powers of the agent, and specifically that the latter cannot bind the Company by accepting "any representation or information not contained in the application for this Policy"; and when a copy of the application is attached to the policy, which is accepted and retained by the insured without reading it.

The applicable rule of law as declared by the District Judge in substance was that under such conditions the Company was legally bound by the oral information correctly given the agent despite the policy provisions to the contrary. There are undoubtedly state court decisions in general support of the rule so declared but, as we have pointed out, the question must be determined by the federal decisions and after a careful review of the latter, we think the law is definitely established contrary to the view adopted at the trial.

The essence of the matter is that the insured accepted a written contract containing plainly expressed provisions which, when applied to the admitted factual situation, negatived the existence of liability on the part of the insurer; and under familiar rules of contract law, liability can be fastened on the insurer in defiance of the terms of the contract only on the theory of an estoppel against the Company based on actual or constructive notice to it through its agent. But this avenue of escape is closed to the insured by the very terms of the contract which notify him that the Company will not be bound by oral information given to the agent but not contained in the written application.

This stipulation is as much a part of the contract as any other term or provision therein, and by accepting the policy the insured must be held in law to have assented thereto even though in fact he did not read the policy. It must be borne in mind that we are dealing here with a situation where a copy of the application signed by the insured is physically attached to the policy which he accepts and the two are bound together inseparably as one entire contract, by which the insured is told that nothing outside of the written contract itself is to be considered binding on the Company, whether communicated by the insured to the agent or not.

At the present time, life insurance in its essential features is a familiar concept, and, as recently said by the Supreme Court in Stipcich v. Metropolitan Life Insurance Company, 277 U. S. 311, 316, 48 S. Ct. 512, 513, 72 L. Ed. 895, "even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him." But to remove any possible doubt or uncertainty in this respect the applicant is generally, as in this case, required in the application to declare "that the answers and statements therein set forth are all complete and true, and that this application and any policy which shall be issued thereon shall constitute the entire contract between the parties." The financial stability of life insurance companies is a matter of very great importance to many million policyholders and their beneficiaries, and this depends in great measure on the care exercised in the selection of risks, which in turn, under the generally known practice, is based most importantly on the reliability of the information afforded to the superior medical officers of the company at its home office, by the contents of the application. In a subject of such importance both to the applicant for insurance and the existing policyholders of the company, a rule of law which imposes on the applicant the simple duty of reading the contents of his application to assure himself of the accuracy and completeness of the information to be given the Company as the basis of its acceptance of the risk, cannot reasonably be said to be too rigorous or exacting; especially where, as here, the policy contains an incontestable clause, limiting the time during which the Company may contest its liability on the ground of fraud or misrepresentation to a relatively short period.

In this case it is not disputed that the

omission in the applications constituted a material misrepresentation which avoids the policies under applicable decisions of the law of North Carolina—where the contract was made—as well as under the federal decisions. Fountain & Herrington v. Mutual Life Ins. Co., 55 F.(2d) 120, 122 (C. C. A. 4); Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Phoenix Mut. Life Ins. Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644; Union Indemnity Co. v. Dodd, 21 F.(2d) 709, 55 A. L. R. 735 (C. C. A. 4); Dudgeon v. Mutual Benefit Health & Acc. Ass'n (C. C. A. 4, April 3, 1934), 70 F.(2d) 49; Richards on Insurance (4th Ed.) p. 607. And it has been settled by decisions of the Supreme Court that under the conditions here prevailing the Company is not estopped by oral information given by the insured to the agent contrary to the conditions of the contract. It was so held in the comparatively early but still frequently cited case of New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934, where the decision was placed upon two grounds: (1) The provisions of the contract limiting the authority of the agent and (2) the receipt and retention by the insured of the policy with the copy of the application thereto attached. On the latter point the court said, at page 534 of 117 U. S., 6 S. Ct. 837, 844:

"There is another view of this case, equally fatal to a recovery. Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. *He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements.* The consequences of that approval cannot after his death be avoided." (Italics supplied.)

The principles announced in the Fletcher Case have been approved and applied by the Supreme Court in later cases involving parallel situations. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367. In the last cited case, at page 567 of 231 U. S., 34 S. Ct. 191, 194, the court said:

"It is contended here, as in the Ætna Case, that the company is estopped by the knowledge of the agent, and the same cases are cited as were cited there. We answer here, as we answered there, that the terms of the policy constituted the contract of the parties and precluded a variation of them by the agent."

And the same principles have been applied by the Supreme Court in the field of fire insurance. Northern Assurance Company v. Grand View Building Ass'n, 183 U S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Id., 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311, 30 S. Ct. 312, 54 L. Ed. 493; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140.

And this doctrine of life insurance law frequently in recent years has been applied by other federal courts in situations quite similar to the present case. Perkins v. Prudential Ins. Co., 69 F.(2d) 218, 221 (C. C. A. 7); Franco v. New York Life Ins. Co., 53 F.(2d) 562, 564 (C. C. A. 5); Massachusetts Protective Ass'n v. Allen, 54 F.(2d) 788, 790 (D. C. Mo.); Mutual Life Ins. Co. v. Seymour, 45 F.(2d) 875, 878 (D. C. Ill.); De Roy v. New York Life Ins. Co., 52 F.(2d) 894, 896 (D. C. Pa.). The same subject was recently considered by this court in Fountain & Herrington v. Mutual Life Ins. Co., 55 F. (2d) 120, 123, where the rule was summarized as follows:

"It is well settled that the courts of the United States will recognize and enforce such limitations upon the power of the agent thus brought to the attention of the insured, and that knowledge on the part of the agent in such case will not be imputed to the company or result in a waiver of conditions contained in the policy."

And the rule was again applied to a like situation in Atlantic Life Ins. Co. v. Hoefer, 66 F.(2d) 464 (C. C. A. 4). In recent years the only federal appellate case in which a contrary conclusion has been reached seems to be Bank Sav. Life Ins. Co. v. Butler (C. C. A.) 38 F.(2d) 972, where the decision was based on the construction of a Missouri statute providing that an insurance solicitor shall be regarded as the agent of the company and not of the insured. The view was taken that the effect of the statute was to cancel the limitations on the agent's authority contained in the contract. But in this court it was held

in Fountain & Herrington v. Mutual Life Ins. Co., supra, that a similarly worded North Carolina statute (C. S. N. C. § 6457) had no such effect, as it did not attempt to prescribe the extent of the agent's authority or convert a special limited agency into one with general powers. And we are of the opinion now, as then, that is the proper construction of the statute and is the one required by the decisions of the Supreme Court in Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 621-623, 36 S. Ct. 676, 60 L. Ed. 1202 (considering a similar Florida statute), and in Sun Insurance Office v. Scott, 284 U. S. 177, 182, 52 S. Ct. 72, 76 L. Ed. 229 (involving a like Ohio statute). See also Stipcich v. Insurance Co., 277 U. S. 311, 321, 48 S. Ct. 512, 72 L. Ed. 895 (dealing with an Oregon statute).

In the Butler Case reliance is also placed on Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341, where the decision, in a case otherwise quite similar to the present, ultimately turned on the construction of the question in the application as interpreted by the soliciting agent. If the case is not thereby distinguishable, it would seem to be not in accord with later decisions of the Supreme Court above cited where the policy provisions have been upheld. See Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 559, 34 S. Ct. 186, 58 L. Ed. 356, and Mutual Life Ins. Co. v. Powell, 217 F. 565, 568 (C. C. A. 5).

Nor do we read Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895, as changing the rule announced by the Supreme Court in the prior cases above cited. There the court dealt with an unusual situation not expressly covered by any stipulation in the policy. The application signed by the insured was in all respects correct but before the delivery of the policy his health became materially impaired and he voluntarily communicated this fact to the Company's agent who nevertheless subsequently delivered the policy without advising the Company. The policy did not contain the provision, frequently found in modern life insurance policies, that it would not be effective unless delivered to the insured while in good health. There was also an applicable Oregon statute similar to those above mentioned. It was held that although there was no express policy provision requiring it, there was nevertheless the duty on the insur-

ed, under the general principles of insurance law, to affirmatively disclose his changed condition to the Company, but that he had met this obligation by communicating the fact to the local agent of the Company, because the policy clause limiting the agent's authority must be taken, under the special conditions, "to apply to information given or available, when the application was prepared, and as inapplicable to knowledge affecting the risk which insured acquired and communicated after the application was signed and delivered to the Company's agent."

The pleadings in this case indicate that the defendants also relied upon a waiver by the Company arising from notice given as to a maturing premium and receipt thereof, both after the institution of this suit for cancellation, which the Company contended was due purely to the inadvertence of a bookkeeper acting in accordance with customary office routine and without knowledge of the controversy. But as we read the record this defense was in substance abandoned by the defendants at the trial. Assuming that this is so, we conclude that on the undisputed evidence in the case which we have above recited, the Insurance Company was entitled to a decree for the cancellation of the policies.

3. The remaining question is whether the plaintiff is also entitled to a permanent injunction against the insured to restrain the prosecution by him of the suits against the Insurance Company for disability benefits alleged to have accrued under the policies. It is contended for the insured that the District Court was without power to grant the injunction by reason of section 379 of the United States Code, title 28 (28 USCA § 379), which provides that injunction shall not be granted to stay proceedings in any court of the state except in bankruptcy cases. The same contention, in a similar case, was fully considered by us in Brown v. Pacific Mutual Life Ins. Co., 62 F.(2d) 711, where the contrary conclusion was reached after an extended review of the authorities. In view of what was there so recently said, we deem it unnecessary to further discuss this issue. We hold that when the decree is passed for the cancellation of the policies the District Court as an incident to its equity jurisdiction has the power to enjoin further prosecution of suits by the insured in the state court for recovery of disability benefits.

Reversed.